**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ERNEST O. ABBIT, on behalf of himself and on behalf of all persons similarly situated,<br><br>                      Plaintiff,<br>  vs.<br><br>ING USA ANNUITY AND LIFE INSURANCE COMPANY,<br><br>                      Defendant. | CASE NO. 13cv2310-GPC-WVG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>[Dkt. No. 6] |

      On September 25, 2013, Plaintiff Ernest O. Abbit ("Plaintiff") filed a complaint ("Complaint") against Defendant ING USA Annuity and Life Insurance Company ("Defendant" or "ING"). (Dkt. No. 1.) On November 25, 2013, Defendant filed a motion to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and a related request for judicial notice. (Dkt. No. 6; Dkt. No. 6-2, "RJN.") The motion has been fully briefed. (Dkt. Nos. 14, 16.) In addition, Plaintiff has filed objections to Defendant's request for judicial notice. (Dkt. No. 14-1.) Pursuant to L. Civ. R. 7.1(d)(1), the Court finds the matter suitable for adjudication without oral argument. For the reasons set out below, the Court **DENIES** Defendants' Motion to Dismiss the Complaint.

# I. BACKGROUND

Plaintiff, an 83-year-old retired senior citizen, alleges purchasing an "ING indexed-annuity with an effective date of September 28, 2010." (Compl. ¶ 27.) Plaintiff seeks to bring a Class Action, on behalf of himself and all others similarly situated, alleging that Defendant unlawfully targets senior citizens by advertising indexed-annuity[1] contracts that purport to protect retirement savings while hiding an undisclosed complex embedded derivative structure. (Compl. ¶¶ 1-9.) Plaintiff seeks to bring this action on behalf of the following class:

> All persons who, within the applicable statute of limitations of the date of commencement of this action and while 65 years of age or older, and a resident of the State of California, purchased one or more ING indexed-annuities either directly, or through surrender (in whole or in part) of, or borrowing against, an existing permanent life insurance policy, annuity, or other retirement savings account.

(Compl. ¶ 22.)

## A. Indexed-Annuities

An annuity is a contract between an investor and an insurance company in which the investor pays premiums to the insurance company in exchange for the insurance company's promise to return the deposit via periodic payments. (Compl. ¶ 29.) Annuity contracts typically undergo two primary periods: the "full accumulation period," during which the investor deposits funds with the insurance company, and the "annuitization period," during which the investor withdraws funds in the form of periodic payments. (Compl. ¶ 30.) "Indexed-annuities" are annuities that "generally earn interest linked-to, or derivative-of the price movements of, an equity index or other index, such as the S&P 500® Index. Indexed annuities can also guarantee interest." (Compl. ¶ 31(c).) Defendant offers five different index-crediting "strategies" from which indexed-annuity investors

//

---

[1] Although Defendant offers other annuity products, Plaintiff purchased, and challenges in his Complaint, only Defendant's "Indexed-annuity" products. (Compl. ¶ 31) (describing also "Fixed Annuities" and "Variable Annuities").

may select.[2] Although Plaintiff chose the "Monthly Cap Index Strategy," Plaintiff alleges that he "would have lost retirement savings under any of the strategy alternatives offered by ING due to the faulty design and execution of the ING indexed-annuities." (Compl. ¶ 67.)

Under the indexed-annuity contracts with ING, ING promised "protection of principal" and "Index Opportunities" for Plaintiff and members of the Class. (Compl. ¶ 3.) However, Plaintiff alleges ING exercised its investment discretion under the contracts in a manner that ensured that its indexed-annuities did not protect or build up retirement savings. Plaintiff alleges ING embedded derivatives into the retirement savings without disclosing them to Plaintiff and members of the Class. "Embedded derivatives" are described as exotic financial structures that are complex, opaque, and illiquid market-linked instruments. (Compl. ¶ 5.)

In addition, Plaintiff alleges Defendant offered indexed-annuity investors a five percent (5%) bonus[3] which purportedly added to investors' total premium at contract inception as an immediate head start on earnings. (Compl. ¶ 35; Compl. Ex. A at 5.)

**B. Plaintiff's Allegations**

Plaintiff alleges Defendant's false and misleading sales pitch and advertising materials induced him to purchase an indexed-annuity from Defendant in or around September 2010. (Compl. ¶ 37.) Plaintiff alleges terminating his Individual Retirement Account and transferring the $1,000,000 proceeds to the ING annuity now at issue via an "IRA rollover." (Compl. ¶ 37.) Plaintiff alleges that the ING

---

[2] The strategies are: (1) "Fixed Rate Strategy;" (2) "Point-to-Point Participation Index Strategy;" (3) "Point-to-Point Cap Index Strategy;" (4) "Monthly Average Index Strategy." (Compl. ¶¶ 66(a)-(e).)

[3] Plaintiff's contract (the "Annuity Contract"), attached to the Complaint as Exhibit A, defines the "bonus" as "an amount equal to a percentage of the Single Premium . . . that we add to the Contracts Accumulation Value on the Contract Date." (Compl., Ex. A at 5.) The contract further states that the "Bonus is elected into the Strategies in the same ratio as you elect for the Single Premium." (Id.)

indexed annuity brochure was false and misleading in the following respects: (1) the statement that "100% of your premium is put into the contract" was false and misleading because under the annuity's complex derivatives structure, Plaintiff immediately lost over $100,000 of his retirement savings value on the first day of his investment; (2) the contract "would not receive interest credited on the full premium, as represented;" (3) the five percent premium bonus promised by Defendant was not immediately credited to the annuity; (4) the five percent premium bonus was not "protected" as promised, and could be "diminished;" and (5) Plaintiff would not receive compounded interest as set forth in the contract. (Compl. ¶¶ 36(a)-(e).)

According to Plaintiff, Defendant designs its indexed-annuity products to "systematically deprive ING annuity holders of retirement savings and earnings potential." (Compl. ¶ 34.) Plaintiff alleges that subsequent to signing Defendant's annuity contract ("the Annuity Contract"), Plaintiff received false and misleading "year end" and "annual" statements that inaccurately accounted for the bonus and daily interest credits promised to Plaintiff under the Annuity Contract. (Compl. ¶ 45.) Specifically, Plaintiff alleges the following false and misleading representations on his year-end and annual statements: (1) the "Cash Surrender Value"[4] of the annuity was materially understated; (2) the "Minimum Guaranteed Contract Value"[5] of the annuity was materially understated; and (3) the statements falsely claimed that the Cash Surrender Value included a Surrender Charge. (Compl. ¶¶ 45, 46, 48.) Plaintiff bases his allegations of understated statement values on allegations that the

---

[4] Under the Annuity Contract, "Cash Surrender Value" is defined as "the value available upon full Surrender of the Contract." (Compl., Ex. A at 5.) "Surrender of the Contract" provides for a means by which investors may receive the "Cash Surrender Value" in exchange for forsaking all other rights under the Contract. (Id. at 7.)

[5] Under the Annuity Contract, "Minimum Guaranteed Contract Value" is the sum of "(a) 87.5% of the portion of the Single Premium elected to the Strategy, less Premium Taxes; adjusted for (b) Any Re-elections or Surrenders of Accumulation Value; plus (c) Interest credited daily at the applicable Minimum Guaranteed Strategy Value Rate." (Compl., Ex. A at 4.)

reported annuity values reflected charges or reductions not provided for by the contract and did not accurately account for the bonus and daily interest credits promised under the annuity contract. (Id.)

Plaintiff alleges Defendant has "purposefully targeted a vulnerable class of senior citizens for sale of these derivatives, embedded in ING's indexed-annuities." (Compl. ¶ 50.) Plaintiff further alleges that Defendant concealed material facts surrounding the annuities' true asymmetric valuations from investors, (Compl. ¶ 51), and failed to train its sales force to either understand, appreciate, or disclose to consumers the true valuations of the derivatives embedded in Defendant's annuity contracts. (Compl. ¶¶ 63, 64)

On September 25, 2013, Plaintiff filed a Class Action Complaint alleging eight causes of action against Defendant: (1) Breach of Contract and Breach of Good Faith and Fair Dealing; (2) Breach of Fiduciary Duty; (3) Financial Elder Abuse in violation of California Welfare & Institutions Code section 15600, *et seq.*; (4) Fraudulent Concealment in violation of California Civil Code section 1710, *et seq.*; (5) Concealment in an Insurance Contract in violation of California Insurance Code section 332; (6) Unlawful, Deceptive, and Unfair Business Practices in violation of California Business & Professions Code section 17200, *et seq.*; (7) Unfair, Deceptive, and Misleading Advertising in violation of California Business & Professions Code section 17500, *et seq.*; and (8) Failure to Supervise. On November 25, 2013, Defendant filed a motion to dismiss all causes of action in the Complaint. (Dkt. No. 6.)

## II. STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted under Rule12(b)(6) where the complaint lacks a cognizable legal theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984); see Neitzke v. Williams, 490 U.S. 319, 326 (1989) ("Rule12(b)(6) authorizes

a court to dismiss a claim on the basis of a dispositive issue of law."). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. Robertson, 749 F.2d at 534. While a plaintiff need not give "detailed factual allegations," a plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 547). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In other words, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002); Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Legal conclusions, however, need not be taken as true merely because they are cast in the form of factual allegations. Ileto v. Glock, Inc., 349 F.3d 1191, 1200 (9th Cir. 2003); W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

### III. DISCUSSION

**A. Judicial Notice**

Generally, on a motion to dismiss, courts limit review to the contents of the complaint and may only consider extrinsic evidence that is properly presented to the court as part of the complaint. See Lee v. City of L.A., 250 F.3d 668, 688-89 (9th

Cir. 2001) (court may consider documents physically attached to the complaint or documents necessarily relied on by the complaint if their authenticity is not contested). However, a court may take notice of undisputed "matters of public record" subject to judicial notice without converting a motion to dismiss into a motion for summary judgment. Id. (citing Fed. R. Evid. 201; MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986)). Under Federal Rule of Evidence 201, a district court may take notice of facts not subject to reasonable dispute that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); see also Lee, 250 F.3d at 689.

Defendant seeks judicial notice of four documents: (1) a pamphlet published by the California Department of Insurance entitled "Annuities - What Seniors Need to Know"; (2) the California Department of Insurance license records for Matthew D. Copley; (3) a pending action involving Plaintiff's trust in the Southern District of New York, Picard, Trustee v. The Ernest Oscar Abbit Living Trust, et al., No. 11-cv-8770 (S.D.N.Y.); and (4) the historical Standard & Poor's 500® Index ("S&P 500") values and basic math calculations set forth in the Declaration of William Bainbridge ("Bainbridge Declaration") and Exhibits 1 through 5 of the Bainbridge Declaration. (Dkt. No. 6-2, "RJN.")

Defendant's first two requests for judicial notice are properly noticeable. The California Department of Insurance pamphlet and license record of Matthew D. Copley are matters of public record and are capable of accurate and ready determination. In fact, Plaintiff does not object to Defendant's first two requests for judicial notice. Finding the pamphlet relevant, the Court takes judicial notice of the California Department of Insurance pamphlet. (Id.) However, the Court declines to take judicial notice of the license record of Matthew D. Copley because neither the Complaint nor Exhibit A to the Complaint mention Mr. Copley. The record is devoid of any allegations that Mr. Copley sells ING annuity products, much less the

1  indexed-annuity products at issue in this case. As such, the Court does not see the
2  relevance of Mr. Copley's license record to the present motion to dismiss. See
3  Adriana Intern. Corp. v. Thoeren, 913 F.2d 1406, 1410 n. 2 (9th Cir. 1990)
4  (declining to take judicial notice of an action not relevant to the case at issue).
5       Plaintiff objects to Defendant's third and fourth requests for judicial notice.
6  (Dkt. No. 14-1.) Plaintiff objects to judicial notice of the pending case in the
7  Southern District of New York on the ground that a court may not take judicial
8  notice of the truth of any matter asserted in other litigation. (Dkt. No. 14-1 at 3)
9  (citing Wyatt v. Terhune, 315 F.3d 1108, 1114 (9th Cir. 2003); Boyd v. City of
10 Oakland, 458 F. Supp. 2d 1015, 1048 (N.D. Cal. 2006)). Defendant offers no
11 authority to the contrary, and the Court finds the pending litigation irrelevant to the
12 current matter. Accordingly, the Court declines to take judicial notice of the Picard,
13 Trustee v. The Ernest Oscar Abbit Living Trust, et al. case. See Adriana Intern.
14 Corp., 913 F.2d at 1410 n. 2.
15      Defendant's fourth request for judicial notice includes the Bainbridge
16 Declaration, which seeks to introduce five exhibits. (Dkt. No. 6-3, "RJN,
17 Bainbridge Decl.") The first three exhibits are documents referenced in the
18 Complaint and are not objected to by Plaintiff. Accordingly, the Court takes judicial
19 notice of the Annuity Contract,[6] the ING brochure made available to sales agents,
20 and the annual statements under Plaintiff's Annuity Contract prepared by ING. (Id.)
21      The Bainbridge Declaration also seeks to introduce calculations of
22 hypothetical Accumulation Values under different index-annuity rate strategies as
23 well as of a calculation of the Minimum Guaranteed Contract Value of Plaintiff's
24 Annuity Contract with Defendant. (RJN, Bainbridge Decl. ¶¶ 5-6.) Plaintiff objects
25 to judicial notice of the calculations of William Bainbridge on the grounds that

---

[6] The Court notes Plaintiff's objection that the copy of the Annuity Contract submitted as "Exhibit 1" to the Bainbridge Declaration is incomplete without the cover page and delivery documents properly submitted with the copy of the Annuity Contract as "Exhibit A" to the Complaint. (Dkt. No. 14 at 10.)

1 Defendant improperly seeks to introduce work product and conclusions; that the
2 Bainbridge Declaration constitutes improper lay opinion and lacks foundation; and
3 that the conclusions set forth in the exhibits attached to the Bainbridge Declaration
4 are subject to dispute. (Dkt. No. 14-1 at 2-3.) The Court agrees that the charts
5 submitted by Defendant fail to provide proper support for the calculations and are
6 subject to dispute. Accordingly, the Court declines to take judicial notice of the
7 calculations at this stage of the litigation. Cf. Miller v. Federal Land Bank, 587 F.2d
8 415, 422 (9th Cir. 1978) (district court should have taken judicial notice of
9 mathematical calculations when deciding a motion for *summary judgment*).

**B. Motion to Dismiss**

By the present motion, Defendant moves to dismiss Plaintiff's Complaint in its entirety for failure to state a claim. (Dkt. No. 6.) Defendant argues the documents referenced in the Complaint, on their face, defeat the plausibility of Plaintiff's claims. (Dkt. No. 6-1 at 9-13) (citing Newbeck v. Washington Mut. Bank, No. C 09-1599 CW, 2010 WL 3222174 at *4 (N.D. Cal. Aug. 13, 2010); Spiegler v. Home Depot U.S.A., Inc., 552 F. Supp. 2d 1036, 1045 (C.D. Cal. 2008); Baymiller v. Guar. Mut. Life Ins. Co., No. SA CV 99-1566 DOC AN, 2000 WL 1026565 (C.D. Cal. May 3, 2000)).

Defendant's cited authorities are distinguishable from the present case. In Newbeck and Spiegler,[7] the courts dismissed the respective plaintiffs' complaints based solely on the language of the contracts at issue because the plaintiffs failed to identify false or misleading representations made by the defendants. See Newbeck,

---

[7]Defendant also cites Baymiller v. Guar. Mut. Life Ins. Co., No. SA CV 99-1566 DOC AN, 2000 WL 1026565 (C.D. Cal. May 3, 2000), claiming that the court in Baymiller dismissed "contract and fraud related claims where contradicted by the express contract terms." (Dkt. No. 6-1 at 9.) The Court disagrees with this characterization of the court's holding. While the Baymiller court's May 3, 2000 Order dismissed Baymiller's contract claims on the ground that the contract terms at issue were unambiguous and contained an express integration clause, the court dismissed Baymiller's fraud claims based on failure to allege justifiable reliance. The court did not find, as Defendant asserts, that the documents on their own defeated the plausibility of Baymiller's legal theory.

1  2010 WL 3222174 at *4; <u>Spiegler</u>, 552 F. Supp. 2d at1045. Here, Plaintiff makes
2  multiple allegations of false or misleading representations that allegedly induced
3  Plaintiff to enter into the Annuity Contract, (Compl. ¶¶ 36(a)-(e)), as well as
4  allegations of false and misleading representations in annual and year-end
5  statements that misstated the amounts due to Plaintiff under the Annuity Contract.
6  (Compl. ¶¶ 45, 46, 48.) Accordingly, the Court declines to dismiss Plaintiff's
7  Complaint for failure to state a claim based solely upon review of the documents
8  attached to the Complaint.
9  In addition, Defendant argues Plaintiff fails to plead specific elements of each
10 alleged cause of action. (Dkt. No. 6-1 at 13.) The Court will thus determine whether
11 Plaintiff has sufficiently stated each of Plaintiff's eight claims for relief.

**1. First Cause of Action - Breach of Contract, Good Faith & Fair Dealing**

13 Plaintiff's first cause of action alleges Defendant breached the parties'
14 contract and the implied covenant of good faith and fair dealing by: abusing
15 Defendant's investment discretion; acting contrary to Defendant's marketing and
16 sales materials; failing to properly credit the annuities owned by Plaintiff; charging
17 expenses through undisclosed means; and by issuing false and misleading periodic
18 statements. (Compl. ¶¶ 102-10.)

**a. Breach of Express Contract**

20 Defendant moves to dismiss Plaintiff's breach of express contract claim on
21 the ground that Plaintiff fails to identify specific provisions of the Annuity Contract
22 allegedly breached by Defendant. (Dkt. No. 6-1 at 13) (citing <u>Constr. Protective</u>
23 <u>Servs., Inc. v. TIG Speciality Ins.</u>, 29 Cal. 4th 189, 198-99 (2002)). Defendant
24 appears to abandon this argument in its reply papers, arguing instead that the
25 express contract terms defeat Plaintiff's claims for breach of express contract. (Dkt.
26 No. 16 at 1-3.) Specifically, Defendant argues that: (1) the "Minimum Guaranteed
27 Contract Value" ("MGCV") does not include the promised bonus as defined under
28 the Annuity Contract, so Defendant did not breach the contract by failing to credit

the bonus to the MGCV; and (2) although Plaintiff alleges the contract fails to compound interest daily when calculating the MGCV, the contract provides only for daily crediting rather than daily compounding. (Id.)

In regard to Plaintiff's allegation that Defendant failed to credit the promised bonus to the MGCV, the Court agrees that this allegation appears contradicted by the express terms of the Annuity Contract. Specifically, Plaintiff claims that "the Contract and periodic statements show that the 5% bonus is part of the 'Single Premium elected to the Strategy' and thus part of the MGCV." (Dkt. No. 14 at 11.) However, "Single Premium" is a defined term in the Annuity Contract, defined as "the single payment you make to us for this Contract." (Compl., Ex. A at 6.) As such, the "Single Premium elected to the Strategy" portion of the MGCV does not, under the Annuity Contract, expressly include the promised Bonus. Accordingly, the Court GRANTS Defendant's motion to dismiss Plaintiff's breach of contract claim based on allegations of improper bonus crediting.

However, Plaintiff's remaining breach of contract allegations based on "daily crediting" sufficiently states a claim for breach of contract to survive a motion to dismiss. To state a breach of contract claim under California law, a plaintiff must plead: (1) the existence of a contract between the parties; (2) the plaintiff's performance or excuse for nonperformance; (3) the defendant's failure to perform; and (4) resulting damages. Harris v. Rudin, Richman & Appel, 74 Cal. App. 4th 299, 307 (1999). Here, the parties dispute the meaning of the contract term "daily crediting," and whether Defendant's failure to compound interest daily constituted Defendant's failure to perform its obligation of "daily crediting" under the Annuity Contract. Construing the Complaint's allegations in the light most favorable to the nonmoving party, the Court finds that Plaintiff has sufficiently alleged breach of contract based on Defendant's failure to credit Plaintiff's annuity daily. Accordingly, the Court DENIES in part Defendants' motion to dismiss Plaintiff's breach of contract claim.

### b. Breach of Implied Covenant of Good Faith & Fair Dealing

Plaintiff's first cause of action also alleges breach of the implied covenant of good faith and fair dealing based on California common law and Defendant's obligations under California Insurance Code section 785(a).[8] (Compl. ¶ 104.) Under California law, "[t]here is implied in every contract a covenant by each party not to do anything which will deprive the other parties thereto of the benefits of the contract." Harm v. Frasher, 181 Cal. App. 2d 405 (1960). A "breach of a specific provision of the contract is not a necessary prerequisite" to establishing a breach of the implied covenant of good faith and fair dealing. Carma Developers (Cal.), Inc. v. Marathon Deb. Cal., Inc., 2 Cal. 4th 342, 373 (1992). However, "[t]he implied covenant will not apply where no express term exists on which to hinge an implied duty, and where there has been compliance with the contract's express terms." Berger v. Home Depot U.S.A., Inc., 476 F. Supp. 2d 1174, 1177 (C.D. Cal. 2007).

Defendant moves to dismiss Plaintiff's good faith and fair dealing allegations on the grounds that: (1) the covenant cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the agreement, (Dkt. No. 6-1 at 14) (citing Guz v. Bechtel Nat'l, Inc., 8 P.3d 1089, 1110 (Cal. 2000)); and (2) Defendant took no actions inconsistent with the Annuity Contract and cannot be held liable for exercising discretion expressly allowed under the contract. (Dkt. No. 6-1 at 14-15) (citing Storek & Storek, Inc. v. Citicorp Real Estate, Inc., 100 Cal. App. 4th 44, 55 (2002); Third Story Music, Inc. v. Waits, 41 Cal. App. 4th 798 (1995)). Plaintiff fails to oppose Defendant's arguments with contrary legal authority. Accordingly, the Court GRANTS Defendant's motion to dismiss

---

[8]The statute states that: "[a]ll insurers . . . and others engaged in the transaction of insurance owe a prospective insured who is 65 years of age or older, a duty of honesty, good faith, and fair dealing." Cal. Ins. Code § 785(a). Plaintiff has not demonstrated that section 785(a) gives rise to a private right of action, so the Court construes Plaintiff's claim as a common law claim for breach of good faith and fair dealing. See In re Nat'l Western Life Ins. Deferred Annuities Litig., 467 F. Supp. 2d 1071, 1088 (S.D. Cal. 2006) (Miller, J.).

Plaintiff's breach of implied covenant of good faith and fair dealing.

**2. Second Cause of Action - Breach of Fiduciary Duty**

Plaintiff's second cause of action alleges Defendant abused a confidential position of trust with Plaintiff, thereby breaching Defendant's fiduciary duty to Plaintiff. (Compl. ¶¶ 111-19.) Defendant moves to dismiss Plaintiff's breach of fiduciary duty cause of action on the ground that no fiduciary duty existed between Plaintiff and Defendant as a matter of law. (Dkt. No. 6-1 at 15-16.) Defendant argues annuities create a debtor-creditor rather than a trust relationship. (Id.) (citing Nationsbank of N.C., N.A. v. Variable Annuity Life Ins. Co., 513 U.S. 251, 259 (1995)). Defendant further argues that Plaintiff fails to allege sufficient facts to give rise to a special relationship between Plaintiff and Defendant. (Id.) (citing In re Conseco Ins. Co. Annuity Mktg & Sales Practices Litig., Nos. C-05-04726 RMW, C-06-00537 RMW, 2007 WL 486367 (N.D. Cal. Feb. 12, 2007)).

Under California law, the relationship "between an insurer and a prospective insured is not a fiduciary relationship." Cal. Serv. Station & Auto. Repair Ass'n v. Am. Home Co., 62 Cal. App. 4th 1166, 1173 (1998). However, an insurer-insured relationship may give rise to a fiduciary duty where other acts or representations form a fiduciary relationship. In re Conseco Ins. Co. Annuity Mktg & Sales Practices Litig., 2007 WL 486367 at *7 (citing Solomon v. N. Am. Life & Cas. Ins. Co., 151 F.3d 1132, 1138 (9th Cir. 1998)). For example, a fiduciary relationship may arise where "one holds himself out as acting in a position of trust, such as an agent or stockbroker." Id. As such, "[w]hether a fiduciary relationship exists in any given situation is a question of fact." Negrete v. Fidelity and Guar. Life Ins. Co., 444 F. Supp. 2d 998, 1003 (C.D. Cal. 2006) (citing Michelson v. Hamada, 29 Cal. App. 4th 1566, 1575-76 (1994)).

Here, Plaintiff alleges Defendant targets senior citizens with products that falsely promise security. (Compl. ¶ 50.) Plaintiff alleges Defendant promises investors continued commitment, thanking them for ongoing trust and confidence in

1 Defendant as their "preferred financial services provider." (Compl. ¶¶ 38, 39, 116.)
2 Plaintiff further alleges Defendant drafted all contractual materials and structured
3 pricing parameters, (Compl. ¶¶ 115, 117), taking advantage of Defendant's superior
4 knowledge and bargaining power. (Compl. ¶¶ 59-60.)

On these facts, taking all allegations as true and construing them in a light most favorable to Plaintiff at this stage of the proceedings, the Court finds that Plaintiff's factual allegations and reasonable inferences from those allegations plausibly suggest a claim entitling Plaintiff to relief. See Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009); see also Comm. on Children's Television, Inc. v. General Foods Corp., 35 Cal. 3d 197, 222 (1983) ("[I]n an exceptional case a court might be able to find that a close and trusting relationship between buyer and seller, in which the buyer relied on the seller and the seller recognized that reliance, justified imposing fiduciary duties."). Accordingly, the Court DENIES Defendant's motion to dismiss Plaintiff's breach of fiduciary duty claim. See In re National Western Life Ins. Deferred Annuities Litig., 467 F. Supp. 2d 1071, 1087-88 (S.D. Cal. 2006); Negrete, 444 F. Supp. 2d at 1003-04.

### 3. Third Cause of Action - Financial Elder Abuse

The Complaint's third cause of action alleges financial elder abuse in violation of California Welfare and Institutions Code section 15657.5, *et seq.*, as defined in section 15610.30. Under section 15610.30, "financial elder abuse" occurs when a person or entity

> (1) Takes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both.
> (2) Assists in taking, secreting, appropriating, obtaining, or retaining real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both.
> (3) Takes, appropriates, obtains, or retains, or assists in taking, secreting, appropriating, obtaining, or retaining, real or personal property of an elder or dependent adult by undue influence, as defined in Section 15610.70.

Cal. Welf. & Inst. Code § 15610.30. Plaintiff alleges Defendant abused a

confidential position of trust to wrongfully take retirement savings from Plaintiff. (Compl. ¶ 122.) Defendant moves to dismiss Plaintiff's financial elder abuse claim, arguing Plaintiff cannot establish "intent to defraud" or "bad faith." (Dkt. No. 6-1 at 16-17) (citing Kennedy v. Jackson Nat'l Life Ins. Co., No. C 07-0371 CW, 2010 WL 4123994 (N.D. Cal. Oct. 6, 2010); O'Brien v. Cont'l Cas. Co., No. 5:13-cv-01289 EJD, 2013 WL 4396761 (N.D. Cal. Aug. 13, 2013)).

Plaintiff responds that bad faith is not required under section 15610.30; allegations of deceptive annuity sales practices suffice to state a claim for elder abuse. (Dkt. No. 14 at 17-19) (citing Johnston v. Allstate Ins. Co., No. 13-CV-574-MMA (BLM), 2013 WL 2285361 (S.D. Cal. May 23, 2013) (Anello, J.); Negrete v. Allianz Life Ins. Co. of N. Am., 927 F. Supp. 2d 870, 890-93 (C.D. Cal. 2013)). The Court agrees. Under the plain language of the financial elder abuse statute, plaintiffs may allege taking of property "for a wrongful use or with intent to defraud, or both." Cal. Welf. & Inst. Code § 15610.30. The statute defines "wrongful use" as a taking of property where the person or entity "knew or should have known that this conduct is likely to be harmful to the elder." Id. § 15610.30(b). The Court finds that Plaintiff's Complaint includes numerous allegations that plead "wrongful use" as statutorily defined. (See, e.g. Compl. ¶¶ 6-9, 11, 12, 18, 21, 23.) Accordingly, the Court DENIES Defendant's motion to dismiss Plaintiff's third cause of action for financial elder abuse.

### 4. Fourth Cause of Action - Fraudulent Concealment

Plaintiff's fourth cause of action alleges fraudulent concealment in violation of California Civil Code section 1710. (Compl. ¶¶ 126-131.) Under California law, a claim for fraudulent concealment requires "knowing concealment or non-disclosure by a defendant with the intent to defraud, which induces justifiable reliance and causes injury to the plaintiff." 625 3rd St. Assoc., L.P. v. Alliant Credit Union, 663 F. Supp. 2d 1040, 1050 (N.D. Cal. 2009) (citing Hoey v. Sony Elec., Inc., 515 F. Supp. 2d 1099, 1104 (N.D. Cal. 2007)). Defendant argues a

1  concealment claim requires Plaintiff to allege Defendant acted with intent to
2  defraud. (Dkt. No. 6-1 at 16) (citing Linear Tech. Corp. v. Applied Materials, Inc.,
3  152 Cal. App. 4th 115, 131 (2007)). Defendant moves to dismiss Plaintiff's
4  fraudulent concealment claim on the ground that ING's disclosure of the
5  information pertinent to the subject of supposed fraud negates specific intent to
6  defraud. (Id.) (citing Kramer v. Time Warner, 937 F.2d 767, 778 (2d Cir. 1991)).
7       The Court disagrees. Although California fraudulent concealment law
8  requires allegations of "intent to defraud" in transactions which "do not involve
9  fiduciary or confidential relations," Linear Tech. Corp., 152 Cal. App. 4th at 131,
10 Plaintiff here alleges Defendant owed Plaintiff a fiduciary duty. "Fraud or deceit
11 may consist of the suppression of a fact by one who is bound to disclose it or who
12 gives information of other facts which are likely to mislead for want of
13 communication of that fact." Hoey, 515 F. Supp. 2d at 1104 (citing Outboard
14 Marine Corp. v. Superior Court, 52 Cal. App. 3d 30, 37 (1975)). As such, the Court
15 DENIES Defendant's motion to dismiss Plaintiff's fraudulent concealment cause of
16 action.

17      **5. Fifth Cause of Action - Concealment in an Insurance Contract**
18      The fifth cause of action in Plaintiff's Complaint alleges concealment in an
19 insurance contract in violation of California Insurance Code section 332. (Compl.
20 ¶¶ 132-139.) Under section 332, "[e]ach party to a contract of insurance shall
21 communicate to the other, in good faith, all facts within his knowledge which are or
22 which he believes to be material to the contract and as to which he makes no
23 warranty, and which the other has not the means of ascertaining." Cal. Ins. Code §
24 332. Defendant argues the annuity contract is not a contract of insurance, so section
25 332 does not apply to the Annuity Contract at issue. (Dkt. No. 6-1 at 17.) In the
26 alternative, Defendant argues the Insurance Code contains an express waiver,
27 whereby failure to "make inquiries as to such facts, where they are distinctly
28 implied in other facts of which information is communicated." Cal. Ins. Code § 336.

Plaintiff fails to respond to either argument. As Defendant's motion to dismiss Plaintiff's fifth cause of action remains unopposed, the Court GRANTS Defendant's motion as to Plaintiff's fifth cause of action.

**6. Sixth and Seventh Cause of Action - Statutory Unfair Competition**

California's Unfair Competition Law ("UCL") generally prohibits any "unlawful, fair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200, *et seq*. Specific to advertising, the California False Advertising Law ("FAL") prohibits any "unfair, deceptive, untrue, or misleading advertising." Cal. Bus. & Prof. Code § 17500, *et seq*. "Any violation of the false advertising law . . . necessarily violates the UCL." Williams v. Gerber Prod. Co., 552 F.3d 934, 938 (9th Cir. 2008) (citing Kasky v. Nike, Inc., 27 Cal. 4th 939, 950 (2002)) (internal quotation marks omitted).

The sixth and seventh causes of action in Plaintiff's Complaint allege violations of both California Business & Professions Code sections 17200 and 17500. (Compl. ¶¶ 140-55.) Plaintiff alleges Defendant's sales materials and standardized annuity contract deceived and misled Plaintiff as to the "ability of the ING indexed-annuities they purchased from Defendant to protect retirement savings and offer income benefits as compared to alternative investments." (Compl. ¶ 148.) Plaintiff alleges Defendant made these representations with the intent to induce purchase of Defendant's indexed-annuity products. (Compl. ¶ 152.)

Defendant moves to dismiss Plaintiff's false advertising claim[9] on the ground

---

[9] While Defendant also moves to dismiss Plaintiff's UCL claim on the ground that Plaintiff lacks standing to assert a UCL claim, the Court finds that Defendant's argument is based on a misreading of Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1149-50 (2003), and declines to dismiss Plaintiff's UCL claim for lack of standing. (See Dkt. No. 6-1 at 19-20) ("As in Korea Supply, Plaintiff's 'expectancy' is not a 'vested interest' for purposes of the unfair competition laws, and he has incurred no other 'losses.'"). Although the Korea Supply Co. court held that the UCL does not authorize non-restitutionary disgorgement, the court distinguished restitutionary disgorgement as a valid remedy under the UCL. 29 Cal. 4th at 1148 ("Under the UCL, an individual may recover profits unfairly obtained to the extent that these profits represent monies given to the defendant or benefits in which the plaintiff

that Plaintiff has failed to identify non-generalized or specific assertions actionable under the FAL; Defendant claims any alleged misstatements constituted mere puffery. (Dkt. No. 6-1 at 21) (citing Shroyer v. New Cingular Wireless Serv., Inc., 622 F.3d 1035, 1043 (9th Cir. 2010); Annunziato v. eMachines, Inc., 402 F. Supp. 2d 1133, 1139 (C.D. Cal. 2005)). Plaintiff responds that the focus of misleading advertising claims is not on whether Plaintiff was actually deceived but on whether members of the public are likely to be deceived by Defendant's statements. (Dkt. No. 14 at 21) (citing Comm. On Children's Television v. Gen. Foods Corp., 35 Cal. 3d 197, 211 (1983)).

The Court first notes that the parties' arguments do not necessarily conflict; generalized statements constituting "mere puffery" are not actionable under section 17500 precisely because "no reasonable consumer relies on puffery." See Stickrath v. Globalstar, Inc., 527 F. Supp. 2d 992, 998 (N.D. Cal. 2007) (quoting Williams v. Gerber Prods. Co., 439 F. Supp. 2d 1112, 1115 (S.D. Cal. 2006) (Miller, J.)). That said, taking Plaintiff's allegations as true, the Court finds Plaintiff has sufficiently pled misrepresentations to state a claim under the FAL and UCL. In particular, Plaintiff alleges that Defendant stated the annuity returns would provide "protection for principal" and contain "minimum guarantees." (Compl. ¶¶ 3, 35.) Plaintiff further alleges Defendant falsely advertised that Defendant's annuities offered "a 5% premium bonus at the inception of your contract" and that "100% of your premium is put into the contract." (Compl. ¶¶ 36, 36(a).) The Court finds that these allegations are sufficiently specific to state a claim for violation of the California FAL and UCL. Accordingly, the Court DENIES Defendant's motion to dismiss Plaintiff's FAL and UCL claims as non-actionable puffery.

//

---

has an ownership interest."). Plaintiff's sixth cause of action plainly seeks disgorgement of ill-gotten gains as restitution for the money and property allegedly wrongfully acquired by Defendant. (Compl. ¶ 145.)

**8. Eighth Cause of Action - Failure to Supervise**

Plaintiff's eighth cause of action seeks to hold Defendant liable for failure to train and supervise sales agents responsible for selling Defendant's indexed-annuities. (Compl. ¶ 158.) Defendant moves to dismiss Plaintiff's failure to supervise claim on the ground that "[i]ndependent agents offer ING USA annuities . . . [and] Defendant had no obligation to train or control any independent agent." (Dkt. No. 6-1 at 22.) Plaintiff responds that the Complaint alleges sales agents acted as agents of ING, (Dkt. No. 14) (citing Compl. ¶¶ 20, 34), and that the existence of an agency relationship is ordinarily a question of fact not properly decided on a motion to dismiss. (Id.) (citing Violette v. Shoup, 16 Cal. App. 4th 611, 619 (1993)).

While Defendant's claim that ING's "sales agents" were in fact "independent agents" may be true, Defendant's argument is not properly raised in a motion to dismiss. See Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984) (dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory or fails to plead essential facts under a cognizable legal theory); see also Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002) (court must assume truth of all factual allegations and construe inferences from them in the light most favorable to the nonmoving party). As alleged in Plaintiff's Complaint, the sales agents undertaking to transact business on behalf of Defendant did not receive sufficient training, supervision, or information regarding Defendant's indexed-annuities. (Compl. ¶ 158); see Violette, 16 Cal. App. 4th at 621 ("An agent is anyone who undertakes to transact some business, or manage some affair, for another, by authority of and on account of the latter, and to render an account of such transactions.") (internal quotation marks omitted). Defendant has not demonstrated that Plaintiff's allegations, as asserted in the Complaint, fail to state a claim for failure to supervise. Accordingly, the Court DENIES Defendant's motion to dismiss Plaintiff's eighth cause of action.

## CONCLUSION

Based on the foregoing, the Court hereby GRANTS in part and DENIES in part Defendants' Motion to Dismiss. (Dkt. No. 6.) Specifically, the Court

1. GRANTS in part, without prejudice, and DENIES in part Defendant's Motion to Dismiss Plaintiff's Breach of Express Contract claim;

2. GRANTS Defendant's Motion to Dismiss Plaintiff's Breach of Implied Covenant of Good Faith and Fair Dealing claim WITHOUT PREJUDICE;

3. DENIES Defendant's Motion to Dismiss Plaintiff's Breach of Fiduciary Duty claim;

4. DENIES Defendant's Motion to Dismiss Plaintiff's Financial Elder Abuse claim;

5. DENIES Defendant's Motion to Dismiss Plaintiff's Fraudulent Concealment claim;

6. GRANTS Defendant's Motion to Dismiss Plaintiff's Concealment in an Insurance Contract claim WITHOUT PREJUDICE;

7. DENIES Defendant's Motion to Dismiss Plaintiff's California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, claim;

8. DENIES Defendant's Motion to Dismiss Plaintiff's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*, claim; and

9. DENIES Defendant's Motion to Dismiss Plaintiff's Failure to Supervise claim.

Plaintiff shall be granted leave to file an amended complaint within thirty (30) days from the date of this Order.

**IT IS SO ORDERED.**

DATED: February 25, 2014

HON. GONZALO P. CURIEL
United States District Judge