1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

9
10

ERNEST O. ABBIT, on behalf of himself and on behalf of all persons similarly situated,

CASE NO. 13cv2310-GPC-WVG

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF REPRESENTATIVE AND APPOINTMENT OF CLASS COUNSEL**

11
12

Plaintiff,

v.

13
14

ING USA ANNUITY AND LIFE INSURANCE COMPANY, et al.

[ECF No. 39]

15
16

Defendants.

17
18
19
20
21
22
23

    Plaintiff  Ernest O. Abbit brings this action, on behalf of himself and all others similarly situated, alleging that Defendants ING USA Annuity and Life Insurance Company and ING U.S., Inc. ("Defendants" or "ING") unlawfully target senior citizens by marketing indexed-annuity contracts that purport to protect retirement savings while hiding an undisclosed complex embedded derivative structure. (FAC  ¶¶ 3-9, ECF No. 20.) Plaintiff asserts that the design and execution of the derivatives have caused him and putative class members harm.

24
25
26
27
28

    Presently before the Court is Plaintiff's Motion for Class Certification, Appointment of Class Representative and Appointment of Class Counsel.  (ECF No. 39.)  ING opposed Plaintiff's motion on May 15, 2015.  (ECF No. 43.)  Plaintiff filed a reply on May 29, 2015. (ECF No. 46.)  A hearing was held on June 25, 2015.  Having considered the parties' submissions and oral arguments, as well as the applicable law,

the Court **GRANTS in part** and **DENIES in part** Plaintiff's motion.

## BACKGROUND

Plaintiff, an 83-year-old retired senior citizen, purchased an "ING (fixed) indexed-annuity with an effective date of September 28, 2010." (FAC ¶ 21.) Plaintiff purchased the annuities through independent financial advisor Matthew Copley. (ECF No. 43-7 at 11:15:20-11:16:57.)

An annuity is a contract between an investor and an insurance company in which the investor pays premiums to the insurance company in exchange for the insurance company's promise to return the deposit via periodic payments. (FAC ¶ 26.) Annuity contracts typically undergo two primary periods: the "full accumulation period," during which the investor deposits funds with the insurance company, and the "annuitization period," during which the investor withdraws funds in the form of periodic payments. (FAC ¶ 27.)

Fixed index annuities ("FIAs") are annuities that "generally earn interest linked-to, or derivative-of the price movements of, an equity index or other index, such as the S&P 500® Index. Indexed annuities can also guarantee interest." (FAC ¶ 28(c).) The policy parameters (such as "caps," "participation rates" and "spreads") are periodically declared by the insurance company. (FAC ¶ 29.) ING used the term "Secure Index" in their fixed index annuities ("FIAs") to portray their FIAs protective investments that have earnings "linked" to the S&P 500 Index (or similar market index) under brand names "ING Secure Index Opportunities Plus," "ING Secure Index Five," "ING Secure Index Seven," and ING Secure Index Outlook." (FAC ¶ 4.) ING offers five different index-crediting "strategies" from which indexed-annuity investors may select. (FAC ¶ 61.)

Plaintiff maintains that ING produced uniform sales materials for FIAs which promised "protection" of assets and "Index Opportunities" for Plaintiff and members of the Class. (FAC ¶ 6, ECF No. 39-21, 70:2-16.)  At his deposition, Plaintiff was asked about the ING USA sales brochure described in his complaint.  Plaintiff testified

that he did not read or review the brochure in detail prior to purchasing the annuity and did not understand it. (ECF No. 43, Ex. 5 at 54:7–12.) During his deposition, when asked to review the brochure and highlight any false statement by ING, Plaintiff said "[n]o. I would prefer not to." (*Id*. at 95:22–96:8.)  In a post-purchase survey (ECF No. 43, Ex. 7), Plaintiff reported that he relied more on independent financial advisor Matthew Copley than on any written materials in deciding to purchase his contract. (ECF No. 43, Ex. 5 at 53:5–11.)

Defendant replies that ING USA fixed index annuities are sold by a variety of individuals and organizations, including independent agents, retail broker-dealers, marketing organizations, and banks. (ECF No. 43, Ex. 4 at ¶ 18.)  Further, ING contends that the only ING USA materials provided to all purchasers are the application and a disclosure form, and that no ING USA sales material are provided to all prospective purchasers. (ECF No. 43 at 6.)

Plaintiff alleges ING embedded derivatives into the retirement savings without disclosing them to Plaintiff and members of the Class. (FAC ¶ 4.)  "Embedded derivatives" are described by Plaintiff as exotic financial structures that are complex, opaque, and illiquid market-linked instruments. (FAC ¶ 5.)  Plaintiff claims ING exercised its investment discretion under the contracts in a manner that ensured that its FIAs did not protect or build up retirement savings.  ING responds that the "embedded derivatives" assertion stems solely from the fact that the annual interest rate may be based on changes in the S&P 500 Index (ECF No. 43 at 2.), and that this information is disclosed in the contract.

Plaintiff also alleges ING offered Secure Index Opportunities Plus annuity investors a five percent (5%) bonus which purportedly added to investors' total premium at contract inception as an immediate head start on earnings. (FAC ¶ 34; FAC Ex. A at 5.)  The 5% bonus was not available to investors in "ING Secure Index Five" and "ING Secure Index Seven" annuities. *Id*.

On March 27, 2014, Plaintiff filed the operative pleading, a First Amended

Complaint, alleging eleven causes of action against Defendant: (1) Breach of Contract (against ING); (2) Breach of the implied covenant of good faith and fair dealing (against ING); (3) Breach of Fiduciary Duty (against ING) and Aiding and Abetting a Breach of Fiduciary Duty (against ING U.S.); (4) Financial Elder Abuse in violation of California Welfare & Institutions Code § 15600, et seq. (against ING); (5) Actual and Constructive Fraud (against ING); (6) Unlawful, Deceptive, and Unfair Business Practices in violation of California Business & Professions Code § 17200, et seq. (against ING); (7) Unfair, Deceptive, and Misleading Advertising in violation of California Business & Professions Code § 17500, et seq.; (against ING); (8) Failure to Supervise (against ING); (9) Declaratory Relief re Qualifying Securities (against ING); (10) violations of the California Securities Act (against ING); and (11) Control Person Liability (against ING U.S.). (ECF No. 20.)  On May 1, 2014, Defendants filed an Answer to the First Amended Complaint. (ECF No. 24.)

On March 27, 2015, Plaintiffs filed the instant Motion to Certify Class. (ECF No. 39). Plaintiff's proposed classes consist of:

### The Multi-State Class

All persons or entities that, when a resident of either the state of California, Florida, Illinois, Pennsylvania or Texas, purchased a Secure Index fixed index annuity contract from ING USA Annuity and Life Insurance Company within the applicable statute of limitations.

Plaintiff proposes to certify this Multi-State Class for violation of breach of contract relating to ING's alleged failure to maintain the contracts' minimum guaranteed contract values. (ECF No. 39 at 10.)

### The California Class

All persons or entities that, when a resident of California, purchased a Secure Index fixed index annuity contract from ING USA Annuity and Life Insurance Company within the applicable statute of limitations.

Plaintiff proposes to certify this California Class for:

(1) Breach of the implied covenant of good faith and fair dealing;

(2) Breach of Fiduciary Duty;

(3) Fraudulent concealment;

(4) Violation of Unfair Competition Law under Cal. Bus. & Prof.Code, § 17200, et seq;

(5) Violation of False Advertising Law ("FAL") under Cal. Bus.& Prof. Code § 17500, et seq.;

(6) Declaratory Relief re Qualifying Securities;

(7) Violations of the California Securities Act under Cal. Corp. Code §25401.

(ECF No. 39 at 10.)

### The California Seniors Subclass

All members of the California Class that were age 65 or older on the date of purchase. (ECF No. 39 at 11.)

Plaintiff proposes to certify this California Class for:

(1) Violation of Financial Elder Abuse Law under Cal. Welf. & Inst. Code § 15600, et seq.

### LEGAL STANDARD

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of individual named parties only.  In order to justify a departure from that rule, a class representative must be a part of the class and possess the same interest and suffer the same injury as the class members." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011) (internal quotation marks and citations omitted).  To fit within the exception, "a party seeking to maintain a class action 'must affirmatively demonstrate his compliance' with [Federal Rule of Civil Procedure] 23." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (quoting *Dukes*, 131 S. Ct. at 2551-52).

Rule 23 contains two sets of requirements. First, "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate. The Rule's four requirements—numerosity, commonality, typicality, and adequate representation—effectively limit the class claims to those fairly encompassed

by the named plaintiff's claims." *Dukes*, 131 S. Ct. at 2550 (internal quotation marks and citations omitted).  Second, "[w]here a putative class satisfies all four requirements of 23(a), it still must meet at least one of the three additional requirements outlined in 23(b)." *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union AFL-CIO, CLC v. ConocoPhillips Co.*, 593 F.3d 802, 806 (9th Cir. 2010).

On a motion for class certification, the Court is required to "examine the merits of the underlying claim . . . only inasmuch as it must determine whether common questions exist; not to determine whether class members could actually prevail on the merits of their claims." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 n.8 (9th Cir. 2011) (citations omitted).

## DISCUSSION

### I.   Rule 23(a)

The Court first examines Plaintiff's showing on each of the requisite prongs of Federal Rule of Civil Procedure 23, starting with Rule 23(a) requirements of numerosity, commonality, typicality, and adequate representation.

### A.   Numerosity

The numerosity requirement is satisfied if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  Here, Plaintiff's proposed class numbers in the thousands.  (ECF No. 39-1 at 11.)  Defendants do not dispute this and have not specifically challenged Plaintiff's motion on numerosity grounds.  In this case, joinder of all members clearly would be impracticable.  The Court, therefore, finds that Plaintiff's proposed class meets the numerosity requirement. *See In re Nat'l W. Life Ins.*, 268 F.R.D. 652, 660-61 (S.D. Cal. 2010) (finding numerosity requirement clearly satisfied where class encompassed over 16,000 annuity policies).

### B.   Commonality

With regard to commonality, Rule 23(a)(2) requires Plaintiff to demonstrate that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  The

claims of the proposed class members must be based on a common contention that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551.

Plaintiff asserts that the class members' claims are based on the common contention "that ING's product design and execution utilized a hidden derivatives structure to transfer risks to Plaintiff and the Class, causing them to overpay for their Secure Index FIA contracts." (ECF No. 39-1 at 12.) Plaintiff also claims that ING failed to maintain the FIAs at the minimum guaranteed value as provided in the contracts and required by law. *(Id*. at 14-15.)   ING does not challenge Plaintiff's motion on commonality grounds.

In the present case, the following common factual and legal questions exist: (1) whether FIA contract forms were uniform and substantially similar as to the claimed protection of FIAs at guaranteed values, ING's exclusive investment discretion, and material omission of the embedded derivatives; (2) whether ING embedded its FIAs with complex derivative structures that caused Class members to lose retirement savings; (3) whether ING owed a special and/or fiduciary obligation to senior citizens and retirees who purchased ING FIAs; (4) whether ING targeted retirees and seniors for sale of its FIAs; (5) whether ING abused its investment discretion in making adjustments to the interest crediting strategy factors and parameters which caused Class members to be harmed; (6) whether ING failed to properly report the FIAs actual present values to the Class members; (7) whether ING falsely reported the FIA contract values in periodic statements mailed to Class members; and (8) whether FIAs qualify as securities under California securities law.

Here, though the parties dispute the intent, propriety, and effect of the derivatives imbedded in the Secure Index FIA contracts, the parties do not appear to dispute that there are derivatives included in each Secure Index FIA contract. Moreover, the evidence presently before the Court supports Plaintiff's view that

putative class members were not informed of the derivatives structure of their Secure Index FIA contracts at the time they entered into the contracts.  As to Plaintiff's contention that this structure resulted in class members overpaying for their contracts, whether this contention is true or false, the formula Dr. McCann devised to value the contracts and assess damages appears to apply equally to all class members.  For purposes of commonality, to the extent Plaintiff contends the putative class members overpaid, they did so at the same time, in the same way.  The Court, therefore, finds the commonality requirement is satisfied.

## C.    Typicality

Under the third Rule 23(a) requirement, the Court must determine whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted).  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (quotation omitted).

Defendants contend that Plaintiff's experience was unique because he relied on an independent agent, Mr. Copley, to tell him the relevant characteristics of the annuity and made his decision based on those oral statements (as opposed to basing his decision on brochures or other materials prepared by ING).  (ECF No. 43 at 17-18.)

Plaintiff responds that the Secure Index FIA contract, which included hidden derivatives and a related hedging structure, was uniform and issued to Plaintiff and each class member, regardless of what agent they used. (ECF No. 39-1 at 12; ECF No.

46 at 8.)  No agent constructed or executed these FIAs. (ECF No. 46 at 8.)  Thus, Plaintiff argues that "Mr. Abbit's claims are not only typical of the Class claims, they are identical: *every* contract contained the complained-of derivatives that transmitted market risk to the Class; *every* contract was improperly priced, *every* contract was breached; and ING ensured that *every* consumer and *every* agent did not receive any information about the hidden derivatives structure that transmitted market risk."  (*Id.*)

Looking again at Plaintiff's common contention—"that ING's product design and execution utilized a hidden derivatives structure to transfer risks to Plaintiff and the Class, causing them to overpay for their Secure Index FIA contracts," (ECF No. 39-1 at 12)—it is apparent that Plaintiff's alleged injury is typical of the class.  The evidence Plaintiff presented in support of his motion supports his assertion that all of the contracts contained the derivative structure (ECF No. 49-4 at 16) and were relatively uniform. (ECF No. 39-19 at 2; FAC ¶¶44, 63-64, and 114-119; FAC, Ex. A.)  Moreover, the evidence before the Court at this time shows that Defendants do not specifically inform sales agents of the derivative structure embedded in the annuities and do not require them to understand how the options structure works.  During the deposition of Chad Tope, ING's President of Annuity Distribution, Mr. Tope explained that "[t]here's not a need for them [sales agents] to understand the options and the derivative market place to understand how our product works  . . ." and "there is no need for them [class members] to understand the hedging."  (ECF No. 39-10 at 104:4-19 - 105:1-7.)  Thus, it is largely immaterial to the typicality analysis that Plaintiff's sales agent may have made unique oral statements during the sales process because the evidence at this point suggests that *none* of the sales agents were aware of the derivative structure and thus, none of them would have made material statements on this issue.  In regard to the final portion of Plaintiff's common contention, that all of the class members overpaid, Plaintiff's overpayment theories are uniform and plausible.

For the foregoing reasons, the Court finds that Plaintiff's claims are typical of

the class he seeks to represent.

### D.   Adequacy

Finally, Rule 23(a)(4) requires the representative parties to fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

As an initial matter, Defendants do not object to class counsel, and the Court's review of the biographical information submitted regarding Hutton Law Group and Taro & Zamoyski, LLP reveals that they are experienced and capable professionals. As such, the Court finds class counsel to be adequate.

Plaintiff contends that he is an adequate representative because he is seeking the same remedies, based on the same core of operative facts, as the putative class. (ECF No. 39-1 at 13.)  Defendants object to Plaintiff's adequacy as a class representative, arguing that many of Plaintiff's claims are moot and that his claim for restitution conflicts with other class members' objectives. (ECF No. 43 at 13-17.)

### 1.   Mootness of UCL, FAL, Fraud, Elder Abuse, Securities and Restitution Claims

ING contends that several of Plaintiff's claims are moot because Plaintiff Abbit can never receive less than what he paid for his contract. (ECF No. 43 at 13-15.)  To the contrary, if Plaintiff surrendered his contract now, he would net a gain. (*Id.* at 15.) Specifically, ING explains that under California's UCL and FAL, restitution is the only damages model available and restitution must account for any benefits received. (ECF No. 43 at 13.)  Because Plaintiff gained more than he lost, his claim is moot.  Likewise, ING contends that in order to recover out-of-pocket damages for a fraud claim, Plaintiff must show that he suffered an actual loss. (*Id.*)  For his elder abuse claim, ING argues that Mr. Abbit "must show that he lost his property and that ING is wrongfully

retaining it." (*Id*.)  Finally, under California securities law, ING asserts that the measure of damages is rescission or the "return of consideration."[1] (*Id*.)  Because all of these causes of action requiring a showing of actual losses and ING contend that Plaintiff has none, ING assert that his claims are moot and that Mr. Abbit, therefore, is an inadequate class representative.  (*Id*.)

Plaintiff Abbit responds that he has provided unrebutted expert opinion that he, as well as every other member of the California Class, were harmed in that each of them overpaid for their FIA.  (ECF No. 46 at 11.)  In response to ING's contention that supervening events must be considered, Plaintiff submits that these events are irrelevant and points out that, as the court held in *In re Nat'l W. Life Ins.*, "[t]he fact that Plaintiffs' accounts increased in value does not mean that the Plaintiffs would not have received more value absent Defendants['] alleged reduction in the credited interest rate."  (*Id.* (quoting *In re Nat'l W. Life Ins.*, 268 F.R.D. 652, 666 (S.D. Cal. 2010)).

Defendants argue that in determining whether Plaintiff is an adequate representative for claims seeking out-of-pocket losses, the Court should not look just at the value of the asset at the time of the transaction, but also at supervening circumstances.  (ECF No. 43 at 14.)  Defendants contend that the fact that Plaintiff has earned more money on his contract than other class members, essentially recouping some of his losses, puts him at odds with other class members in terms of the out-of-pocket damages calculation.

Recently, the Ninth Circuit held that damages calculations in UCL and FAL actions need not account for benefits received after purchase of the service because the focus is on the value of the service at the time of purchase. *Pulaski & Middleman, LLC v. Google, Inc*., No. 12-16752, 2015 WL 5515617, at *8 (9th Cir. Sept. 21, 2015).  The court observed that, instead, in calculating restitution under the UCL and FAL, the

---

[1]   ING also notes that they believe Plaintiff's securities law claim is meritless because California securities law specifically excludes annuity contracts from the definition of a "security." (ECF No. 43 at 13 (citing Cal. Corp. Code § 25109 ("'Security' does not include . . . any . . . annuity contract.")).

focus is on the difference between what was paid and what a reasonable consumer would have paid at the time of purchase without the fraudulent or omitted information. *See also Kwikset Corp. v. Super. Ct.,* 51 Cal. 4th 310, 329 (2011).

Using the economic harm at the time of purchase, Plaintiff's recovery turns on the same calculation as the remainder of the class and Plaintiff is an adequate representative for the proposed classes.

### 2. Mootness of Breach of Contract Claim

ING also asserts that Mr. Abbit is an inadequate representative on the breach of contract cause of action because the claim relates to ING's alleged failure to provide for daily compounding of interest in his minimum guaranteed contract value ("MGCV") calculation, and Plaintiff has reached a point where his Cash Surrender Value is certain to be higher than the MGCV even if interest on the MGCV had been compounded daily.[2]  (ECF No. 43 at 15.)  Plaintiff did not respond to this argument. The Court finds below that this portion of the claim is not suitable for certification based on predominance.   However, Plaintiff's claim of failure to maintain the contracts' minimum guaranteed values is also based on ING setting the prices of the undisclosed derivatives structure so low that the true values of the contracts were below the minimum values guaranteed. ING does not challenge Mr. Abbit's adequacy as a representative as to the undisclosed derivatives structure claim.  Accordingly, the Court finds that Plaintiff is an adequate representative on the breach of contract cause of action as to this portion of the claim.

## II.   Rule 23(b)(3)

Plaintiff argues that the Court should grant class certification under Rule 23(b)(3).  Under Rule 23(b)(3), Plaintiff must show that "questions of law or fact common to class members predominate over any questions affecting only individual

---

[2]  Defendant's assertion that Plaintiff's Cash Surrender value is certain to be higher than his MGCV is based on paragraph 4 of the Declaration of William Bainbridge (ECF No. 43-1.)  Plaintiff objects to paragraph 4 as irrelevant, lacking in foundation, impermissible lay opinion, and speculation. (ECF No. 46-1 at 1.)

1  members, and that a class action is superior to other available methods for fairly and

2  efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Rule 23(b)(3) lists

3  the following factors as pertinent to a court's assessment of the predominance and

4  superiority criteria:

5      (A) the class members' interests in individually controlling the

6      prosecution or defense of separate actions;

7      (B) the extent and nature of any litigation concerning the controversy

8      already begun by or against class members;

9      (C) the desirability or undesirability of concentrating the litigation of the

10      claims in the particular forum; and

11      (D) the likely difficulties in managing a class action.

12  *Id.*

13      **A.    Predominance**

14      To satisfy the predominance requirement, "the common questions must be 'a

15  significant aspect of the case ... [that] can be resolved for all members of the class in

16  a single adjudication.'" *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir.

17  2014) (quoting *Hanlon*, 150 F.3d at 1022).  The predominance inquiry requires a court

18  to consider "how a trial on the merits would be conducted if a class were certified. *Bell*

19  *Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 302 (5th Cir. 2003) (quotation marks and

20  citation omitted).  This, in turn, "entails identifying the substantive issues that will

21  control the outcome, assessing which issues will predominate, and then determining

22  whether the issues are common to the class, a process that ultimately prevents the class

23  from degenerating into a series of individual trials." *Id*. (quotation marks and citation

24  omitted).

25      Here, the predominance inquiry begins with identifying the evidence that

26  supports each of the causes of action identified in the motion; determining the extent

27  of the common factual and legal issues, and determining whether common issues

28  predominate.

### 1.   Multi-State Breach of Contract Cause of Action

With respect to the breach of contract cause of action, Plaintiff seeks certification of a multi-state class as to ING's failure to maintain the contracts' minimum guaranteed values. (ECF No. 41 at 14-15.)  This breach allegedly occurred as a result of (1) ING failing to calculate and compound interest daily; and (2) ING setting the prices of the undisclosed derivatives structure so low that the true values of the contracts were below the minimum values guaranteed. (*Id*.)

ING contends that extrinsic evidence of each class member's understanding of what the contract intended will be necessary to support Plaintiff's claim that the contract term providing for "interest credited daily" actually means "interest credited *and compounded* daily." (ECF No. 43 at 23.)  Because this individual inquiry will be necessary, ING argues Plaintiff has failed to demonstrate predominance. (*Id.*) Defendants argue that this is particularly true given that Plaintiff proposes a multi-state class and Plaintiff has failed to establish that "each state's rules on construction, extrinsic evidence, ambiguity, and *contra proferentum* are uniform, or that those differences can be respected at trial." (*Id.* at 24.)

Plaintiff responds that, even if it were true that evidence of contractual intent and extrinsic evidence were necessary, this would not make the adjudication unmanageable. (ECF No. 46 at 10.)  First, Plaintiff believes contractual intent can be determined through common evidence, such as premium payments and contract delivery.  (*Id.*) Second, Plaintiff points out that the FIAs are fully integrated and the plain meanings of "interest credited daily" and "minimum guaranteed contract value" are uniform. (*Id.*)  Third, Plaintiff states that "any extrinsic evidence to resolve the meaning of the contractual guarantees as related to the hidden 'embedded derivatives' is also common to the Class." (*Id.* (citing ING's SEC filing)).  Finally, Plaintiff submits that there are no meaningful variances between the five states in terms of their rules of construction, so any differences can be managed during the litigation and trial.  (*Id.* at 10 and n.22.) Plaintiff provides a chart comparing the different states' laws on contract interpretation.

1  (ECF No. 46, Ex. G).

2  ING asserts that "[a] class action should not be certified where extrinsic evidence

3  as to the scope and meaning of contractual duties may be necessary." (ECF No. 43 at

4  23.) ING relies on *Monaco v. Bear Stearns Co.*, No. CV 09-05438-SJO-JCX, 2012 WL

5  10006987, at *6 (C.D. Cal. Dec. 10, 2012), where the court considered a proposed class

6  of individuals who had undertaken option adjustable rate mortgages. The court

7  determined that certain contract terms were ambiguous and that extrinsic evidence was

8  required to construe them. *Monaco*, 2012 WL 10006987, at *6. Because the three

9  named plaintiffs varied significantly in their understanding of the ambiguous contract

10  terms,[3] the court found that common issues did not predominate. *Id. Fletcher v. Sec.*

11  *Pac. Nat'l Bank*, 23 Cal. 3d 442, 448-49 (1979), involved a claim that the bank's

12  practice of calculating "per annum" interest rates on a 360 day year constituted unfair

13  trade practice. The court found that individual issues of each borrower's knowledge

14  predominated over the common questions of law, because many borrowers were aware

15  of the bank's policy.

16  In the instant case the parties dispute the meaning of "interest credited daily."

17  The Court finds that the question cannot be answered with common evidence and

18  requires extrinsic evidence and individualized determinations as to the annuitants'

19  knowledge and understanding of this contract language.

20  Plaintiff also raises a second contract based claim regarding ING setting the

21  prices of the undisclosed derivatives structure so low that the true values of the

22  contracts were below the minimum values guaranteed. (FAC ¶¶ 38, 88-89.) Plaintiff

23  claims that ING did not properly maintain the minimum contractual values, as ING was

24  obliged to do contractually and pursuant to Cal. Ins. Code § 10168.25. ING has not

---

26  [3] "Mr. Monaco believed, based on conversations with his broker, that he was taking on a loan

27  with a 1 % interest rate for "at least one year" and that he was only required to pay interest, and not
   the principal. Mrs. Monaco believed that the interest rate would vary between 1% and 3% for five

28  years, based on conversations with her husband. Finally, Brandt has testified that he believed he was
   entering into a thirty-year 1% fixed rate loan based on conversations with his broker and a notary.
   *Monaco*, 2012 WL 10006987, at *6 (internal citations omitted).

13cv2310-GPC-WVG

challenged Plaintiff's allegation that the undisclosed derivatives were common to all FIAs and that common evidence exists to determine whether the FIAs value was less than the minimum values guaranteed under the contracts and the law.  The factual and legal issues as to this claim appear to be common and amenable to class determination. The Court finds that Plaintiff has sufficiently alleged a breach of contract that is capable of being adjudicated with common evidence and that class certification is appropriate.[4]

## 2.    California Class (Statutory Claims)

Plaintiff asserts statutory claims for (1) Unlawful, Deceptive and Unfair Business Practices ("UCL") (Cal. Bus. & Prof.Code § 17200, et seq.); (2) Unlawful, Deceptive and Misleading Advertising ("FAL") (Cal. Bus. & Prof.Code § 17500, et seq.); (3) violations of the Elder Abuse statute (Cal. Welf. & Inst.Code § 15610, et seq.), and (4) violations of the California Securities Act (Cal. Corp. Code §25401).  (FAC ¶¶ 144-150, 157-172, 190-192.)

Plaintiff alleges the common contention that ING's product design and execution utilized a hidden derivatives structure to transfer risks to Plaintiff and the Class, causing them to overpay for their Secure Index FIA contracts.  (FAC No. 49 at 12.) According to Plaintiff, this common contention is capable of class-wide resolution through common evidence, including, inter alia, (1) uniform sales materials, (2) uniform training of sales agents, (3) pricing memoranda, (4) ING's interest-crediting decisions driven by meeting corporate objectives, (5) uniform Secure Index FIA contracts, and (6) expert analyses of FIA contract data. *Id.*

///

---

[4] Plaintiff alleges ING offered Secure Index Opportunities Plus annuity investors a five percent (5%) bonus which purportedly added to investors' total premium at contract inception as an immediate head start on earnings. (FAC ¶ 34; FAC Ex. A at 5.)  However, the 5% bonus was not available to investors in "ING Secure Index Five" and "ING Secure Index Seven" annuities. As such, questions relating to the bonus are not common to the entire class and are not suitable for class certification. *Cf., Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1067-68 (9th Cir. 2010) ("Class certification is available only to those members who were actually exposed to the business practices at issue.").

### a. Unfair Competition Law

California Business and Professions Code § 17200, et seq. is also known as the Unfair Business Practices Act or Unfair Competition Law. "California's unfair competition statute prohibits any unfair competition, which means 'any unlawful, unfair or fraudulent business act or practice.'" *In re Pomona Valley Med. Group, Inc.*, 476 F.3d 665, 674 (9th Cir. 2007) (citing Cal. Bus. & Prof. Code §§ 17200, et seq.). "The 'unlawful' practices prohibited by . . . section 17200 are any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *South Bay Chevrolet v. General Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 881 (1999) (citations omitted). Under the unlawful prong, therefore, the UCL "borrows" violations of other laws and makes them independently actionable under the UCL. In addition, a practice that is not "unlawful" under the UCL may still be considered "unfair." *See Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180-81 (1999). To be unfair, the plaintiff must be able to show that his claim is "tethered" to an underlying law. *Cel-Tech*, 20 Cal. 4th at 186-87. Finally, the fraudulent prong of § 17200 requires a showing "that 'members of the public are likely to be deceived.' Allegations of actual deception [and] reasonable reliance . . . are unnecessary." *Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197 (1983).

The California Supreme Court has held that "[r]elief under the UCL is available without individualized proof of deception, reliance and injury." *In re Tobacco II Cases*, 46 Cal.4th 298, 320 (2009). The California Court of Appeal noted in *Massachusetts Mutual Life Insurance Co. v. Superior Court*, 97 Cal. App. 4th 1282 (2002),

> The fact that a defendant may be able to defeat the showing of causation as to a few individual class members does not transform the common question into a multitude of individual ones; plaintiffs satisfy their burden of showing causation as to each by showing materiality as to all. Thus, it is sufficient for our present purposes to hold that if the trial court finds material misrepresentations were made to the class members, at least an inference of reliance would arise as to the

entire class.

*Id.* at 1292–93 (internal quotation marks and citations omitted).

### I. Fraudulent Prong

ING contests predominance under the "fraudulent" prong of the UCL based on the lack of uniform misrepresentations in the marketing or sale of the FIAs. ING points out that oral and written presentations were made to putative class members by independent agents and financial advisors, using their own sales materials. (ECF No. 43 at 19-20.) ING assert that "[t]here is no ING USA sales 'script,' and the agents and advisors were not required to provide any ING USA materials to prospective purchases other than an application and related disclosure form." (ECF No. 43 at 19.) Absent a showing that putative class members received "uniform written or oral misrepresentations or omissions," ING contends that Plaintiff cannot demonstrate that common issues predominate. (*Id.* at 19-20.) ING further asserts that the individualized nature of sales also defeats any claims that ING USA was a fiduciary. (*Id.* at 20.)

Plaintiff alleges that ING created uniform sales materials that promised a "guarantee" to "Protect Your Assets" (FAC ¶ 6) and interest potential beyond "other sources of fixed income." (*Id.*) Mr. Abbit then points out that **all** agents are required to complete training before they sell FIAs and **all** agent-generated sales messaging must be pre-approved by ING. (ECF No. 46 at 2 n.4 (citing Dep. of Chad Tope, ECF No. 39-10 at 53:7-11) and n.6 (citing Dep. of Chad Tope, ECF No. 39-10 at 47:1-9; 49:1-11).) Additionally, Mr. Abbit highlights that the agent must attest to ING that they had not made statements that differ from the sales materials, illustrations or proposals that were provided. (ECF No. 46 at 2.)

However, there is no evidence that any "uniform materials" other than the contracts were provided to class members. Though the independent agents had to certify that they had not made representations contrary to ING's written materials, they were not affirmatively required to make any representations about "protection" of

retirement assets. This deficiency is not cured by the fact that sales agents were required to attend training, that agent-generated materials were pre-approved by Defendants or that agents attest that they did not make statements that differ from the sales materials. These assertions do not show that the promises that Plaintiff received were made classwide to FIA purchasers. Instead, they only support the conclusion that agents did not make any promises beyond those that were contained in ING materials at any particular time.

Other courts have addressed the argument that unique oral representations by sales agents defeat certification in cases based on misrepresentations. The determination in these cases turns on whether the agent relied on uniform sales materials or a uniform sales script. *Compare Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1035 (8th Cir. 2010) (denying class certification where annuity company "did not adopt a uniform approach with respect to its representation of its interest-crediting policies" and where "annuities were sold by thousands of independent agents who did not follow a particular sales script when working with customers"), *and In re LifeUSA Holding Inc.*, 242 F.3d 136, 146-47 (3d Cir. 2001) (denying class certification where there was absence of commonality where independent sales agents did not use sales script in selling annuities, did not rely on uniform sales materials, and were not required to attend training seminar before selling LifeUSA annuities), *with Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087 (9th Cir. 2010) (reversing denial of class certification where there was failure to disclose material information in uniformly provided brochures concerning the detriments from annuities which were sold to seniors by independent brokers), *Negrete v. Allianz Life Ins. Co. of N. Am.*, 287 F.R.D. 590, 595 (C.D. Cal. 2012) (denying motion to decertify class where there were misrepresentations as to no sales charges and immediate bonus contained in brochures provided to the consumer), *In re Nat'l W. Life Ins. Deferred Annuities Litig.*, 268 F.R.D. at 665 (granting partial class certification where each class member received specific written materials from Defendant which made specific claims regarding a

premium bonus and no up-front fees), *and Iorio v. Allianz Life Ins. Co. of N. Am.*, No. 05CV633 JLS CAB, 2008 WL 8929013, at *23, *27 (S.D. Cal. July 8, 2008) (denying motion to decertify class and upholding finding that distribution of uniform written communications to each class member "allayed concerns about any differences in the oral communications that the independent selling agents made to class members").

The Court finds a lack of uniformity as to the misrepresentations made to Class members and finds that individualized questions predominate on this theory of recovery. As a result, the Court turns to the other prongs under section 17200 to determine whether class certification is appropriate under the UCL.

### ii. Unlawful and Unfair Prong

Plaintiff also relies on the "unlawful" prong of the UCL by alleging violations of the Cal. Ins. Code §§ 332, 780, 781, 827 and 10168.25. (FAC 38, 88-89, 159; ECF No. 39 at 19.).[5]   *See Pastoria v. Nationwide Ins*., 112 Cal. App. 4th 1490, 1496 (2003) (plaintiffs allege that the defendants acted "unlawfully" by violating Insurance Code §§ 330, et seq.); *see also Burdick v. Union Sec. Ins. Co.*, No. CV 07-4028 ABC (JCX), 2009 WL 4798873, at *16 (C.D. Cal. Dec. 9, 2009) (violations of Ins. Code § 330, et seq. constitute "unlawful" conduct giving rise to UCL claim). Plaintiff's theory under the Insurance Code is based on the allegation that ING failed to maintain guaranteed values of the Secure Index FIAs as required by Cal. Ins. Code § 10168.25. Plaintiff intends to prove this claim through the uniform language in the FIAs and the testimony of his expert witness. (ECF No. 39 at 7)   ING has not addressed this "unlawful conduct" theory. The Court finds that there are common issues of fact and law as to

---

[5] Cal. Ins. Code § 332 provides "[e]ach party to a contract of insurance shall communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract and as to which he makes no warranty, and which the other has not the means of ascertaining." Cal. Ins. Code §§ 780 and 781 prohibit misrepresentations in the sale of insurance policies and Cal. Ins. Code § 827 involves the unpermitted sales of securities by an insurer. Cal. Ins. Code § 10168.25 sets out the approved method for determining minimum nonforfeiture amounts.

this claim and that it is suitable for class certification.

In addition, "a breach of contract may form the predicate for Section 17200 claims, provided it also constitutes conduct that is 'unlawful, or unfair, or fraudulent.'" *Puentes v. Wells Fargo Home Mortgage, Inc*., 160 Cal. App. 4th 638, 645 (2008), *quoting Watson Laboratories, Inc. v. Rhone-Poulenc Rorer, Inc*. 178 F. Supp. 2d 1099, 1117, n.12 (2001); s*ee also Allied Grape Growers v. Bronco Wine Company*, 203 Cal. App. 3d 432 (1988) (buyers' breach of contract to purchase grapes constituted unfair business practice under Section 17200).  To the extent that Plaintiff alleges a breach of contract based upon the same "unlawful" failure to maintain guaranteed values of the FIAs, the alleged breach of contract may also constitute an "unfair" business practice.

Based upon the above analysis, the Court finds that common issues predominate as to the "unlawful" and "unfair" business practices claim and Plaintiff's motion to certify a class based upon a violation of the UCL is GRANTED.

### b. False Advertising Law

Plaintiffs' false advertising claim is based on Cal. Bus. & Prof. Code § 17500, which "renders it unlawful for a defendant to 'induce the public to enter into any obligation' based on a statement that is 'untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.'" *Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1122 (9th Cir. 2009) (citing Cal. Bus. & Prof. Code § 17500). This statement must also be "ma[de] or disseminate[d] . . . in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet." Cal. Bus. & Prof. Code § 17500.

The Court finds insufficient evidence of uniform public dissemination of any untrue or misleading statement.  As noted above, Plaintiff has failed to demonstrate that ING brochures were provided to all class members or that class members were

subjected to a uniform advertising campaign. As such, Plaintiff has failed to demonstrate that uniform misrepresentations were uniformly disseminated. Plaintiff's motion to certify the California class as to the FAL claim is DENIED.

### c. Elder Abuse Law

Plaintiffs allege financial abuse under California's Elder Abuse law, Cal. Welf. & Inst. Code § 15657.5. This law "reflect[s] the Legislature's intent to provide enhanced remedies to encourage private, civil enforcement of laws against elder abuse and neglect." *Intrieri v. Superior Court*., 117 Cal. App. 4th 72 (2004) (citation omitted). "'Financial abuse' of an elder . . . occurs when a person or entity . . . [t]akes, secretes, appropriates, or retains real or personal property of an elder or dependent adult to a wrongful use or with intent to defraud, or both." Cal. Welf. & Inst. Code § 15610.30(a)(1). Under the statute, it is not necessary that the taker maintain an intent to defraud if it can be shown that the person took the property for a wrongful use and "knew or should have known that [his or her] conduct is likely to be harmful to the elder . . . ." *Bonfigli v. Strachan*, 192 Cal. App. 4th 1302, 1315 (2011), *as modified on denial of reh'g* (Mar. 24, 2011). *See also* Welf. & Inst. Code § 15610.30(b).

The Court has found that class certification is suitable as to claims for unlawful business practices which include allegations that would satisfy the first element of the claim, i.e. ING took money from a subclass of elders. The remaining element for elder abuse requires Plaintiff to establish that money was taken "to a wrongful use." This element focuses on whether ING took the money wrongfully or with the intent to defraud. Plaintiff's theory regarding the failure to maintain guaranteed values of the Secure Index FIAs is based upon common evidence and is common as to all putative class members, thus making class certification appropriate on this claim as well. Therefore, the Court GRANTS the motion to certify the elder abuse class.

### d. Securities Laws

Plaintiff also seeks certification of a class based upon violations of the California

securities laws.  Under California law, annuities are exempted from securities laws. Cal. Corp. Code § 25109 ("'Security' does not include . . . any . . . annuity contract."). Notwithstanding California law, Plaintiff argues that FIAs are securities because ING's internal execution of the "derivatives" and "options" transfers market risks from ING to Plaintiff and the California Subclass. (ECF No. 39 at 21.)

As observed by Dr. McCann, FIAs have been regulated by state insurance commissions, rather than by the Securities and Exchange Commission and the NASD. (ECF No. 49-6 at 67.)  Plaintiff acknowledges the state of the law but offers a novel theory which would extend the reach of securities law to FIAs.  ING has not opposed certification on the security causes of action. Given that common questions of law exist that can be disposed of by motion for summary judgment, the Court GRANTS certification on the security causes of action.

### 3.    California Class (Common Law Claims)

Plaintiff also seeks class certification as to claims for breach of implied covenant of good faith and fair dealing, breach of fiduciary duty, and fraudulent concealment. (ECF No. 20 ¶¶ 113-143, 151-156, & 173-179.)  Plaintiff summarily addresses the merits of class certification as to these three causes of action in less than one page of briefing.  (ECF. No. 46 at 18.) The proponent of the class bears the burden of demonstrating that class certification is appropriate. *In re N.D. Cal., Dalkon Shield IUD Prods. Liab. Litig.*, 693 F.2d 847, 854 (9th Cir.1982) (citation omitted).  "[A] party seeking to maintain a class action 'must affirmatively demonstrate his compliance' with [Federal Rule of Civil Procedure] 23." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (*quoting Dukes*, 131 S. Ct. at 2551-52).  The Court finds that Plaintiff has failed to meet his burden of proof of establishing that common issues predominate as to the claims relating to implied covenant of good faith and fair dealing, fiduciary duty, and fraudulent concealment. Plaintiff's motion to certify class as to these common law causes of action is DENIED.

### 4.    Damages

Finally, Defendants argue that Plaintiff has failed to show that damages are measurable on a class-wide basis because each putative class member has experienced individualized gains and credits. (ECF No. 43 at 24.) Additionally, Plaintiff apparently purports to measure each contract's returns against the returns of two specific mutual funds. (*Id.* at 25.) Defendants contend this is inappropriate because Plaintiff testified that he did not want to invest in the stock market and risk a loss. (*Id.*) Defendants argue this disconnect between Plaintiff's damages model and the factual record violates *Comcast*. (*Id.*)

ING argues that Plaintiff's out-of-pocket damages calculation ignores the individualized gains and credits that each proposed class member has experienced since purchase. (ECF No. 43 at 24.) Those gains allegedly differ based on a variety of factors, including the contract issue date and each individual's interest-crediting strategy selection. (*Id.*) Further, ING submits that Plaintiff's benefit-of-the-bargain calculation is based on an assumption that is contrary to the record. (*Id.* at 25.) Plaintiff responds that Dr. McCann utilizes damages and FIA valuation methodologies that are well-accepted and that both models provide uniform methods of calculating damages for the class. (ECF No. 46 at 6.)

In *Yokoyama,* the district court, in denying class certification, found that the damages calculation involved highly individualized and fact-specific determinations relating to, among other things, the financial circumstances and objectives of each class member; their ages; the indexed annuity products ("IAP") selected; the performance of the selected index; any changes in the index margin for that particular IAP; any cap on the indexed interest; and the actual rate of return on the IAP. *Yokoyama v. Midland Nat. Life Ins. Co.*, 243 F.R.D. 400, 410 (D. Haw. 2007), *rev'd*, 594 F.3d 1087 (9th Cir. 2010). The Ninth Circuit reversed the district court observing that damage calculations alone cannot defeat certification. *Yokoyama*, 594 F.3d at 1094. The Court concluded

that there were no individualized issues sufficient to render class certification inappropriate under Rule 23.

While the Court entertains concerns as to the methodology of Dr. McCann,[6] the Court finds at this time that the damage model is plausible and that individualized issues do not defeat certification.

### B.   Superiority

Rule 23(b)(3) requires that class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023 (noting that in some cases, "litigation costs would dwarf potential recovery") (internal citation omitted).  Considerations pertinent to this finding are "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3)(A-D).

Defendants argue that the "benefit of the bargain" damages Plaintiff and other putative class members would be seeking are high enough that they would have a substantial interest in proceeding independently (even factoring in that Plaintiff's damages are substantially higher than most class members').  (ECF No. 43 at 10-11.) Defendants argue that this is particularly true given that some of the asserted claims

---

[6] While Plaintiff submits that Dr. McCann's damage models are well-accepted, some courts have expressed reservations about the methodology employed by Dr. McCann in modeling damages in annuity cases. *Yokoyama*, 243 F.R.D. at 410  (finding expert testimony of Dr. McCann plausible in spite of reservations about the methodology employed in modeling damages); *Negrete*, 238 F.R.D.at 493 (finding that while court had some skepticism that Dr. McCann's model is supportable, plaintiffs offered a facially plausible method for showing causation and impact across-the-board).

permit an award of attorney's fees, treble damages, and other bases for increasing a compensatory award. (*Id.* at 11.)

Plaintiff argues that while the individual damages suffered by each class member are not insignificant, the transaction costs of filing individual claims against a company like ING would far outweigh their recovery. (ECF No. 39-1 at 23; ECF No. 46 at 9 (noting that the cost of hiring an FIA advisor alone could surpass the recoverable amounts).)

There are no other actions relating to the present issues pending. The current action is being led by a litigant who has a large stake in the litigation and is motivated to adequately represent the interests of putative class members. Lastly, given the high litigation costs, it is unlikely that other FIA consumers will file separate actions. *Cf.*, *In re Bank One Securities Litigation/First Chicago Shareholders Claims*, 2002 WL 989454, *8 (N.D. Ill. 2002). As such, the Court finds that class litigation is superior to individual actions.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** Plaintiff's motion for class certification. (ECF No. 39.) The following classes are hereby certified pursuant to Fed. R. Civ. P. 23(a) and (b)(3) as to the causes of action approved herein:

### The Multi-State Class

All persons or entities, excluding defendants and their directors, officers, predecessors, successors, affiliates, agents, co-conspirator and employees, as well as the immediate family members of such persons, that, when a resident of either the state of California, Florida, Illinois, Pennsylvania or Texas, purchased a Secure Index fixed index annuity contract from ING USA Annuity and Life Insurance Company within the applicable statute of limitations.

///

**The California Class**

All persons or entities, excluding defendants and their directors, officers, predecessors, successors, affiliates, agents, co-conspirator and employees, as well as the immediate family members of such persons, that, when a resident of California, purchased a Secure Index fixed index annuity contract from ING USA Annuity and Life Insurance Company within the applicable statute of limitations.

**The California Seniors Subclass**

All members of the California Class that were age 65 or older on the date of purchase, excluding defendants and their directors, officers, predecessors, successors, affiliates, agents, co-conspirator and employees, as well as the immediate family members of such persons.

The Court designates Plaintiff Ernest O. Abbit as class representative and appoints the Hutton Law Group and Tatro & Zamoyski, LLP as class counsel. The Court directs the parties to confer and submit a joint proposed notice to the Classes on or before December 14, 2015.

To the extent that the Court relied upon evidence to which Plaintiff objected, the objections are overruled. (ECF No. 46.) The Court did not rely on any inadmissible evidence in reaching its decision. To the extent the Court did not rely on evidence to which the Plaintiff objected, the objections are overruled as moot.

**IT IS SO ORDERED**.

DATED:  November 16, 2015

HON. GONZALO P. CURIEL
United States District Judge