UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

ERNEST O. ABBIT, on behalf of himself and on behalf of all persons similarly situated,

Plaintiff,

v.

ING USA ANNUITY AND LIFE INSURANCE COMPANY, and ING U.S., INC.,

Defendants.

Case No.: 3:13-cv-2310-GPC-WVG

**ORDER:**

**GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**DENYING PLAINTIFF'S MOTION TO MODIFY ORDER, AND ALTERNATIVELY, TO STRIKE SUMMARY JUDGMENT MOTION**

**GRANTING PLAINITFF'S MOTION TO SEAL**

**[ECF No. 70, 77, 79]**

Before the Court is Defendants ING USA Annuity and Life Insurance Company and ING U.S., Inc.'s (collectively, "Defendants" or "ING") Motion for Summary Judgment ("Def. Mot."), ECF No. 70. Also before the Court is Plaintiff Ernest O. Abbit's ("Plaintiff") Motion to Modify Order, or Alternatively, to Strike Summary Judgment Motion ("Pl. Mot."), ECF No. 77. The motions have been fully briefed. *See* Plaintiff's

Opposition to Defendants' Motion for Summary Judgment ("Pl. Resp."), ECF No. 81; Defendants' Reply in Further Support of Their Motion for Summary Judgment ("Def. Reply"), ECF No. 87–90; Defendants' Response in Opposition to Plaintiff's Motion to Modify Order, or Alternatively, to Strike Summary Judgment Motion ("Def. Resp."), ECF No. 93; Plaintiff's Reply in Support of Plaintiff's Motion to Modify Order, or Alternatively, to Strike Summary Judgment Motion ("Pl. Reply"), ECF No. 107. A hearing on the motions was held on June 24, 2016. ECF No. 111.

Upon consideration of the moving papers, oral argument, and the applicable law, the Court **GRANTS** Defendant's motion for summary judgment, and **DENIES** Plaintiff's motion to modify order, or alternatively, to strike summary judgment motion.

## BACKGROUND

An annuity is a contract between an investor and an insurance company in which the investor pays premiums to the insurance company in exchange for the insurance company's promise to return the deposit via periodic payments. ECF No. 59 at 2. Annuity contracts typically undergo two primary periods: the "full accumulation period," during which the investor deposits funds with the insurance company, and the "annuitization period," during which the investor withdraws funds in the form of periodic payments. *Id.* Fixed index annuities ("FIAs") are annuities that "generally earn interest linked-to, or derivative-of the price movements of, an equity index or other index, such as the S&P 500® Index. Indexed annuities can also guarantee interest." *Id.* The policy parameters (such as "caps," "participation rates" and "spreads") are periodically declared by the insurance company. *Id.* Plaintiff, an 83-year-old retired senior citizen, purchased an ING "Secure Index Opportunities Plus" FIA with a $1,000,000 premium payment on September 28, 2010. ING Secure Index Opportunities Plus Contract Oppo. 0134 ("Contract"), Pl. Resp., Ex. F, ECF No. 80-5; Defendants' Reply to Plaintiff's Separate Statement of Facts ("Def. SSUF Reply") 7, ECF No. 90

On March 27, 2014, Plaintiff filed the operative pleading, a First Amended Complaint, alleging eleven causes of action against Defendants: (1) Breach of Contract;

(2) Breach of the Implied Covenant of Good Faith and Fair Dealing; (3) Breach of Fiduciary Duty and Aiding and Abetting a Breach of Fiduciary Duty; (4) Financial Elder Abuse in violation of California Welfare & Institutions Code § 15600, et seq.; (5) Actual and Constructive Fraud; (6) Unlawful, Deceptive, and Unfair Business Practices in violation of California Business & Professions Code § 17200, et seq. (also known as the Unfair Competition Law ("UCL")); (7) Unfair, Deceptive, and Misleading Advertising in violation of California Business & Professions Code § 17500, et seq.; (8) Failure to Supervise; (9) Declaratory Relief re Qualifying Securities; (10) violations of the California Securities Act; and (11) Control Person Liability. ECF No. 20. Plaintiff alleged that Defendants had exercised their investment discretion under the FIA contracts in a manner that ensured that the FIAs did not protect or build up retirement savings, by embedding derivatives into the FIAs without disclosing them to customers. ECF No. 59 at 3.

On November 16, 2015, the Court certified the class. *Id.* Specifically, the Court certified the following five claims: (1) a breach of contract claim based on "ING setting the prices of the undisclosed derivatives structure so low that the true values of the contracts were below the minimum values guaranteed," *id.* at 15; (2) a UCL claim, flowing from the breach of contract claim, based on "Plaintiff's theory under the Insurance Code . . . that ING failed to maintain guaranteed values of the Secure Index FIAs as required by Cal. Ins. Code § 10168.25," *id.* at 20; (3) a Financial Elder Abuse Claim, also flowing from the breach of contract claim, based on "Plaintiff's theory regarding the failure to maintain guaranteed values of the Secure Index FIAs," *id.* at 22; and (4) two securities law claims under California law, based on Plaintiff's "novel theory which would extend the reach of securities law to FIAs" on the basis that "FIAs are securities because ING's internal execution of the 'derivatives' and 'options' transfers market risks from ING to Plaintiff and the California Subclass," *id.* at 23. On April 26, 2016, the Court directed dissemination of class notice. ECF No. 91.

On February 1, 2016, Defendants filed their motion for summary judgment. Def.

Mot., ECF No. 70. On April 8, 2016, Plaintiff responded. Pl. Resp., ECF No. 81. On April 22, 2016, Defendants replied. Def. Reply, ECF Nos. 87–90.

Separately, on March 24, 2016, Plaintiff filed their motion to modify order, or alternatively, to strike Defendants' motion for summary judgment. Pl. Mot., ECF No. 77. On April 28, 2016, Defendant responded. Def. Resp., ECF No. 93. On June 17, 2016, Plaintiff replied. Pl. Reply, ECF No. 107.

A hearing on the motions was held on June 24, 2016. ECF No. 111. On July 20, 2016, the opt-out period expired. ECF No. 91 at 1.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986). Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when it affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial. *Id.* at 322–23. If the moving party fails to bear the initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477

U.S. at 324. If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. *Id.* at 325. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289 (1968)). In making this determination, the court must "view[] the evidence in the light most favorable to the nonmoving party." *Fontana v. Haskin*, 262 F.3d 871, 876 (9th Cir. 2001). The Court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact. *Anderson*, 477 U.S. at 255.

## DISCUSSION

### I. Breach of Contract/UCL/Financial Elder Abuse Claims

The elements of a breach of contract claim are: (1) existence of a valid contract; (2) the plaintiff's performance of the contract or excuse for nonperformance; (3) the defendant's breach; and (4) resulting damages. *Harris v. Rudin, Richman & Appel*, 74 Cal. App. 4th 299, 307 (1999). Defendants argue that Plaintiff cannot show that Defendants breached the Contract, since at all times, ING maintained the Minimum Guaranteed Contract Values specified in the Contract.[1]

As an initial matter, the Court notes that the parties dispute the scope of the breach of contract claim certified by the Court. Defendants argue that the breach of contract claim the Court certified was for whether "ING did not properly maintain the minimum contractual values, as ING was obliged to do contractually and pursuant to Cal. Ins. Code § 10168.25." Def. Mot. 8. Plaintiff argues that the claim the Court certified was broader, and included "ING setting the prices of the undisclosed derivatives structure so low that

[1] Because the Court agrees that Plaintiff has not established breach, the Court does not address Defendants' additional argument that Plaintiff cannot show damages.

the true values of the contracts were below the minimum values guaranteed." Pl. Resp. 19.

This dispute is immaterial, because the Court finds that even if Plaintiff's broader interpretation is correct, Defendants would still prevail because Plaintiff has not raised a genuine issue of material fact as to the breach of an actual contract term. The key issue is that Plaintiff cannot point to any specific contract term that actually promises "true value," or that ING would maintain a "minimum guaranteed contractual value" ("MGCV") for the Contract at any time other than termination.

The relevant provisions of the Contract are on the "Contract Data Page", Oppo. 0142-43, Pl. Resp., Ex. F, and in section 5, "Guaranteed Contract Values," Oppo. 0148-49. These two sections of the contract explain the formulae used to calculate the amount of money received by an investor who wishes to terminate the Contract. On the Contract Data Page, the contract states that the "Minimum Guaranteed Contract Value equals the sum of the Minimum Guaranteed Strategy Value of Each Strategy." The Contract then states that "[t]he Minimum Guaranteed Strategy Value of each Strategy equals: (a) 87.5% of the portion of the Single Premium elected to the Strategy, less Premium Taxes; adjusted for (b) Any Re-elections or Surrenders of Accumulation Value; plus (c) Interest credited daily at the applicable Minimum Guaranteed Strategy Value Rate." Oppo. 0143.

In turn, the "Re-elections and Surrender Adjustments" page sets forth a table whereby surrender charges and bonus recapture charges (i.e., the amount of the bonus credited by ING when an investor opens an account that is taken back by ING when the account is closed) decrease as the contract year increases. *Id.* In section 5, "Guaranteed Contract Values," the Contract provides further information as to the meaning of the contract terms referenced on the "Contract Data Page" and the formulae used by ING to determine the "Cash Surrender Value" of the contract. Oppo. 0148 ("The Cash Surrender Value of this Contract equals to the greater of: (a) The Minimum Guaranteed Contract Value; or (b) The Accumulation Value, adjusted for any Market Value Adjustment applicable; less any surrender charge and Bonus Recapture").

Plaintiff argues that ING has breached the contract in essentially two ways. First, Plaintiff argues that these contract terms promise that ING will maintain the "true value" or "economic value" of the contracts above the MGCV at all times. Pl. Resp. 16. Plaintiff points to a provision of section 5 that states that "[t]he reserves and guaranteed values will at no time be less than the minimum required by the laws of the state in which this Contract was issued." Plaintiff argues that "[i]f the Class is holding an investment that is worth less than its cash value, these circumstances give rise to an impermissible forfeiture of promised benefits." Pl. Resp. 17. Plaintiff urges that "there is no term in the contract that explains that the exclusive means to realize the Minimum Guaranteed Contract Value is contract termination." Plaintiff also argues that the contract term "Minimum Guaranteed Strategy Values" "contain the value relative to the contracts' embedded derivatives/options." Pl. Resp. 20. Finally, Plaintiff points to extrinsic evidence in a brochure that "[t]he minimum guaranteed contract value sets a minimum value that your contract will not fall below." *Id.*

None of these arguments are persuasive. The Contract Data Page and section 5 of the Contract set forth a comprehensive scheme for the calculation of the amount of money received by an investor who wishes to terminate the Contract. There is no indication that the contract terms referenced by Plaintiff refer to any value that exists outside of at the time of termination. The term "Minimum Guaranteed Strategy Values" is clearly defined as equal to the MGCV for each strategy, and there is no suggestion that the term is in any way related to "the value relative to the contracts' embedded derivatives/options." Pl. Resp. 20. Finally, a more plausible interpretation of the references in the Contract and brochure to a "value that your contract will not fall below" is that ING promises that the investor will always be able to collect a minimum value for the Contract should they wish to exit the investment.

Second, Plaintiff argues that ING "breached contract provisions governing the index strategies," such as the statement in section 6 of the Contract that the "'Index Credit' is the amount credited to each Premium/Re-election elected to this Strategy and is

based on the performance of the applicable [S&P 500] Index as measured over the Indexing Period." Pl. Resp. 12 (citing Oppo. 0149). Plaintiff argues that under 10 C.C.R. § 2523.5, a regulation implementing provisions of Cal. Ins. Code § 10168.25, an "[e]quity-indexed benefit" is defined as a "benefit in which the value is determined using an interest crediting rate based on the performance on an equity-based index and contract parameters," Pl. Resp. 22, and ING's FIAs were not so indexed.

The Court finds this argument unpersuasive for two reasons. First, 10. C.C.R. § 2523.5 is seemingly a *definition* of an "equity-indexed benefit," rather than a regulatory requirement that the Contract offer equity-indexed benefits. Second, Plaintiff has not explained what the relationship is between the certified claim as to whether ING maintained minimum guaranteed contract values and what essentially amounts to a new claim as to whether or not ING adhered to the "based on" contract term as to the S&P 500 index. This "based on" claim was never raised in Plaintiff's class certification motion, and is not a certified claim, so the Court will not permit Plaintiff to raise it now. *See* ECF No. 39.

Since the Court rejects both of Plaintiff's desired interpretations of the Contract, Plaintiff can only survive summary judgment by raising a genuine dispute of material fact as to whether Defendants have ever breached the express MGCV-related provisions of the Contract as interpreted by the Court. Defendants attest that ING has always retained enough reserves to pay the cash surrender value of the contracts, that ING has always appropriately calculated the cash surrender value of the contracts to any investors who requested them, and that ING has always given the same full cash surrender value to any investors who requested them. Defendants offer the declaration of William Bainbridge, the Head of Annuity Product Development for ING USA's successor-in-interest, to that effect. *See* ECF No. 70-11.

Plaintiff challenges the sufficiency of the Bainbridge Declaration, arguing that it is inadmissible because the information offered contains legal conclusions and Bainbridge does not have personal knowledge as to the information offered. ECF No. 81-32.

However, it is well established that "[a] corporation is entitled to state its legal positions and bring business documents into the summary judgment record via an affidavit of a corporate officer." *See Hardin v. Reliance Trust Co.*, 2006 U.S. Dist. LEXIS 70818, at *6 (N.D. Ohio Sept. 28, 2006) (denying motion to strike portions of corporate officer's declaration submitted in support of summary judgment motion); *see also AGI Realty Serv. Group v. Red Robin Int'l*, 1996 U.S. App. LEXIS 10122, at *10–11 (6th Cir. 1996) ("Corporate officers are considered to have personal knowledge of the acts of their corporations and an affidavit setting forth those facts is sufficient for summary judgment."); *Philbrick v. eNom, Inc.*, 593 F. Supp. 2d 352, 364 (D.N.H. 2009) ("[I]t is axiomatic that a corporate representative may testify and submit affidavits based on knowledge gained from a review of books and records." (quoting *Harrison-Hoge Indus., Inc. v. Panther Martin S.R.L.*, 2008 U.S. Dist. LEXIS 25480, at *28 (E.D.N.Y. March 31, 2008)) (internal quotation marks omitted)); *accord Cuevas v. BAC Home Loans Servicing LP, 648 F.3d 242, 250* (5th Cir. 2011). The Court thus finds that Plaintiff has failed to raise a genuine issue of material fact as to whether Defendant has ever breached the express terms of the Contract.

Accordingly, the Court **GRANTS** Defendants' motion for summary judgment on the breach of contract claim. Moreover, since the UCL and Financial Elder Abuse claims are based on the same underlying theory as the breach of contract claim, *see* ECF No. 59 at 20, 22, the Court also **GRANTS** Defendants' motion for summary judgment on the UCL and Financial Elder Abuse claims.

**II. Securities Law Claims**

Defendants argue that fixed-index annuities are not securities, and therefore are not subject to California securities laws. Def. Mot. 17. Under California law, annuities are exempted from securities laws. Cal. Corp. Code § 25109 ("'Security' does not include . . . any . . . annuity contract."). Plaintiff argues that the FIAs should be considered securities because "ING's internal execution of the 'derivatives' and 'options' hedging structure of the contracts transfers market risks from ING to plaintiff," Pl. Resp. 6, and

"[w]ithout a minimum guarantee in place during the life of the contract, defendants do not bear any real investment risk before contract termination," Pl. Resp. 8.[2]

However, Defendants rightfully point out that it is illogical to argue that ING FIAs transfer market risk to Plaintiff when the Contract guarantees that Plaintiff will receive at least the amount he invested less the surrender charge. Def. Reply 6. With a minimum guaranteed cash surrender value, if the market declines during the life of the Contract, it is ING that would bear the risk of loss, not Plaintiff. The only market risk Plaintiff bears is ING's insolvency, and the risk of insolvency is insufficient to convert a transaction into sale of a security. *Noa v. Key Futures, Inc.*, 638 F.2d 77, 79 (9th Cir. 1980).

Accordingly, the Court **GRANTS** Defendants' motion for summary judgment on the California securities law claims.

**III. Plaintiff's Motions**

First, Plaintiff argues that Defendants' motion for summary judgment should be struck or denied without prejudice because the class notice period has not yet expired. Pl. Mot., ECF No. 77. However, since the opt-out period expired on July 20, 2016, *see* ECF No. 91 at 1, the Court **DENIES** Plaintiff's motion as moot.

Second, in his opposition to Defendants' motion for summary judgment, Plaintiff sought three forms of further discovery pursuant to Fed. R. Civ. P. 56(d): (a) "[i]nformation showing how ING calculates interest credits for class members which is key to understanding how considerations separate from the S&P 500 Index impact the return on investment that class members ultimately receive"; (b) "[i]nformation showing how ING hedges risk which is key to understanding how considerations separate from the S&P 500 Index impact the return on investment that class members ultimately receive"; and (c) "[i]nformation showing how ING addresses market risks is key to understanding

[2] Plaintiff also asserts that the U.S. Supreme Court has found a similarly executed hybrid annuity was not exempt from the securities laws in circumstances such as those here. *See* Pl. Resp. 8 (citing *SEC v. United Ben. Life Ins. Co.*, 387 U.S. 202, 208–11 (1967)). However, *United Beneficial* is inapposite in that it involved variable annuities which, unlike FIAs, are contracts which are considered nonexempt securities. *See* 387 U.S. at 210–12.

how considerations separate from the S&P 500 Index impact the return on investment that class members ultimately receive." ECF No. 81-33 at 2–3.

The Court **DENIES** Plaintiff's request for further discovery. None of the requested information is required to decide Defendants' motion for summary judgment, because the requested information would only be relevant if the Court finds, as a matter of law, that the contract makes promises as to how ING "calculates interest credits," "hedges risk," and "addresses market risks" that are relevant to the certified claims. Since, as discussed *supra* in Part I, Plaintiff fails to show how the provisions of the Contract governing the index strategies are relevant to the certified claims, the requested information is irrelevant to decide the summary judgment motion.

**CONCLUSION**

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion for Summary Judgment, ECF No. 70, is **GRANTED**;
2. Plaintiff's Motion to Modify Order, or Alternatively, to Strike Summary Judgment Motion, ECF No. 77, is **DENIED**;
3. Plaintiff's Motion to Seal, ECF No. 79, is **GRANTED**.

**IT IS SO ORDERED.**

Dated: August 30, 2016

Hon. Gonzalo P. Curiel
United States District Judge