UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNEST O. ABBIT, on behalf of himself and on behalf of all persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ING USA ANNUITY AND LIFE INSURANCE COMPANY, ING U.S., INC.,<br><br>Defendants. | Case No.: 13-cv-2310-GPC-WVG<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF No. 121.]** |

Before the Court is Plaintiff Ernest O. Abbit's ("Plaintiff's") Motion for Reconsideration of this Court's Order Granting Defendants' Motion for Summary Judgment pursuant to Federal Rules of Civil Procedure 59(e) and 60(b). (Dkt. 121.) Defendants ING USA Annuity and Life Insurance Company and ING U.S., Inc. (collectively, "Defendants" or "ING") opposed the motion. (Dkt. No. 125.) Plaintiff filed a reply. (Dkt. No. 127.) The Court finds the motion suitable for disposition without oral argument pursuant to Civil Local Rule 7.1(d)(1). Upon review of the moving papers and applicable law, the Court **DENIES** Plaintiff's Motion for Reconsideration.

/ / / /

# BACKGROUND

The Court has previously recited the factual background in this case at length and will not reiterate it here. (*See, e.g.*, Order Granting Defendants' Motion for Summary Judgment on Certified Class Claims, Dkt. No. 117; Order Granting in Part and Denying in Part Motion for Class Certification, Dkt. No. 59.) A brief review of relevant procedural background suffices.

On November 16, 2015, the Court granted in part Plaintiff's motion for class certification. (Dkt. No. 59 at 26.)[1] Specifically, the Court certified the following five claims: (1) a breach of contract claim based on "ING setting the prices of the undisclosed derivatives structure so low that the true values of the contracts were below the minimum values guaranteed," (*id.* at 15); (2) a UCL claim, flowing from the breach of contract claim, based on "Plaintiff's theory under the Insurance Code . . . that ING failed to maintain guaranteed values of the Secure Index FIAs as required by Cal. Ins. Code § 10168.25," (*id.* at 20); (3) a financial elder abuse claim, also flowing from the breach of contract claim, based on "Plaintiff's theory regarding the failure to maintain guaranteed values of the Secure Index FIAs," (*id.* at 22); and (4) two securities law claims under California law, based on Plaintiff's "novel theory which would extend the reach of securities law to FIAs" on the basis that "FIAs are securities because ING's internal execution of the 'derivatives' and 'options' transfers market risks from ING to Plaintiff and the California Subclass," (*id.* at 23).

On February 1, 2016, Defendants filed a motion for summary judgment on the certified class claims. (Dkt. No. 70.) On April 26, 2016, the Court directed dissemination of the class notice. (Dkt. No. 91.) On June 24, 2016, the Court held a hearing on Defendants' motion for summary judgment. (Dkt. No. 111.) On July 20, 2016, the opt-out period expired. (Dkt. No. 91 at 1.) On August 30, 2016, the Court

---

[1] Unless otherwise noted, all citations to the record are based upon the pagination generated by the CM/ECF system.

1  granted Defendants' motion for summary judgment on all certified class claims.  (Dkt.
2  No. 117.)
3        Plaintiff filed the instant motion on September 27, 2016.  (Dkt. No. 121.)

## LEGAL STANDARD

A district court may reconsider a grant of summary judgment under either Federal Rule of Civil Procedure ("Rule") 59(e) or Rule 60(b).  *Sch. Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d 1255, 1262 (9th Cir. 1993).  Under Rule 59(e), reconsideration is "appropriate if the district court (1) is presented with newly discovered evidence; (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law."  *Sch. Dist. No. 1J, Multnomah County, Or.*, 5 F.3d at 1263; *see also Ybarra v. McDaniel*, 656 F.3d 984, 998 (9th Cir. 2011).  Rule 60(b) "provides for reconsideration only upon a showing of (1) mistake, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) a void judgment; (5) a satisfied or discharged judgment; or (6) 'extraordinary circumstances' which would justify relief."  *Sch. Dist. No. 1J, Multnomah Cty., Or.*, 5 F.3d at 1263 (quoting *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1442 (9th Cir. 1991)).  In addition, Local Civil Rule 7.1(i)(1) provides that a motion for reconsideration must include an affidavit or certified statement of a party or attorney

> setting forth the material facts and circumstances surrounding each prior application, including inter alia: (1) when and to what judge the application was made, (2) what ruling or decision or order was made thereon, and (3) what new and different facts and circumstances are claimed to exist which did not exist, or were not shown upon such prior application.

Local Civ. R. 7.1(i)(1).

The Court has discretion in granting or denying a motion for reconsideration.  *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1441 (9th Cir. 1991).  A court should not grant a motion for reconsideration "absent highly unusual circumstances."  *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999).  "A motion for reconsideration

should not be used to ask the court 'to rethink what the court had already thought through—rightly or wrongly.'" *United States v. Rezzonico*, 32 F. Supp. 2d 1112, 1116 (D. Ariz. 1998) (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)).

## DISCUSSION

Plaintiff moves for reconsideration pursuant to Rules 59(e) and 60(b), arguing that the Court "committed clear error, mistake and/or inadvertence[.]" (Declaration of Timothy J. Tatro in Support of Plaintiff's Motion for Reconsideration of Court's Order Granting Defendants' Motion for Summary Judgment ("Tatro Decl."), Dkt. No. 121-2 at 2.) Plaintiff specifically contends that:

1. The Court improperly, and outside of Rule 23 proceedings, reframed the common Class contention it had previously certified and noticed under *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011), in a manner inconsistent with Abbit's common case contention;

2. The Court utilized the wrong legal standards to summarily dismiss the California Securities Act claims as a matter of law, without substantial evidentiary bases to do so;

3. The Court interpreted and applied limited contract provisions in a vacuum, without reference to the entire contract, and without applying the proper rules of contract interpretation;

4. The Court erroneously concluded that none of the Class statutory claims could survive without a breach of contract claim;

5. The Court denied Abbit the opportunity to take discovery that would have demonstrated key factual issues in dispute, including that Defendants took actions to transfer risk to Class members, proving that the FIAs really operate as securities; and

      6. The Court's ruling leaves unchallenged the common Class contention under *Dukes* that Defendants mispriced the contract's derivatives causing the Class to overpay for their contracts.

(Dkt. No. 121-2 at 2–3.)

In addition, Plaintiff names one fact that was purportedly previously unavailable: "ING/Voya provides tax documents to contract holders that delineate the 'fair market value' of the holders' investment (IRS Form 5498). That fair market value tracks with the Strategy Value of the investment." (Dkt. No. 121-2 at 3.)

**I.   "Based On" Claim**

At the summary judgment stage, Plaintiff argued that Defendants breached contract provisions by not basing interest credits on the performance of the S&P 500 Index. (Dkt. No. 81 at 17–18.) The Court determined that this claim (referred to by the parties as the "based on" claim) was raised for the first time at the summary judgment stage and was not a certified claim. (Dkt. No. 117 at 8.) Here, Plaintiff attempts to revive the claim by construing the "based on" claim as "infused into the certified claims." (Dkt. No. 121-1 at 11.) Having shoehorned the "based on" claim into the certified claims, Plaintiff accordingly asserts that the Court committed error by not permitting Plaintiff to oppose summary judgment with evidence related to the common class contention. (*Id.* at 11–12.)

Defendant responds that Plaintiff again attempts to resuscitate his uncertified claim by "broaden[ing] the scope of the class certification order." (Dkt. No. 125 at 4–5.) And even if the "based on" claim were certified, summary judgment would still have been proper "because the contracts and California law do not require interest credits to be 'based only on' the S&P 500 Index." (*Id.* at 5 n.1; Dkt. No. 87 at 7–8.)

While Plaintiff cites a single sentence in the Court's Order that describes FIAs as annuities that "generally earn interest linked-to . . . an equity index . . . such as the S&P 500 Index," (Dkt. No. 127 (quoting Dkt. No. 59 at 2)), Plaintiff cannot overcome the fact that the Court did not certify the multi-state breach of contract claim on the "based on"

5

theory, (Dkt. No. 59 at 15).  Despite his efforts, Plaintiff cannot litigate what amounts to a new claim by way of a motion for reconsideration.

Accordingly, the Court declines to reconsider its conclusion concerning the "based on" claim.

## II.   Breach of Contract Claim

Chief among Plaintiff's contentions is that the Court adopted a "myopic" view that "the <u>only</u> contract value guaranteed by ING is the cash received by someone terminating their investment." (Dkt. No. 121-1 at 5–8.)  Plaintiff argues that the Court "effectively recast the Class claims as focusing on the termination value of the contract, as if that was the contractual guarantee that had been violated." (*Id.* at 12.)  Plaintiff reasserts his argument from the summary judgment stage that Defendants breached contractual provisions guaranteeing a "true value." (*Compare* Dkt. No. 121-1 at 12–14 *with* Dkt. No. 81 at 17–23.)  Plaintiff raises his 2010 Form 5498—which he asserts was previously unavailable, without explanation as to the reasons for its unavailability—as evidence that there is in fact a "fair market value" that corresponds to the alleged true value of the investment. (Dkt. No. 121-2 at 3; Dkt. No. 121-3 at 2.)

First, Plaintiff was in possession of his 2010 tax form prior to filing this instant action; as such, he may not use a motion for reconsideration "to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003); *accord Sch. Dist. No. 1J, Multnomah Cty., Or.*, 5 F.3d at 1263 ("The overwhelming weight of authority is that the failure to file documents in an original motion or opposition does not turn the late filed documents into 'newly discovered evidence.'") . As Defendants point out, even if Plaintiff had timely raised it, the tax form actually discredits Plaintiff's allegation that his contract was worth less than what he paid for at inception. (Dkt. No. 125 at 7.)

Next, beyond Plaintiff's production of his 2010 Form 5498, Plaintiff offers nothing new to demonstrate that the Court committed error and merely reiterates his arguments from the summary judgment stage.  Plaintiff frames the Court's inquiry (whether or not

Defendants breached a term of the contract term, and if so, which contractual term) as an unnecessarily restrictive inquiry into the termination value of the contract. In doing so, Plaintiff sidesteps the problem the Court highlighted in its Order: Plaintiff still "cannot point to any specific contract term that actually promises 'true value,' or that ING would maintain a 'minimum guaranteed contractual value' . . . for the Contract at any time other than termination." (Dkt. No. 117 at 6.)

Plaintiff's characterization of the Court's focus on the termination value of the contract is misguided for another reason. Defendants argued at the summary judgment stage that "[a]t *no time* has the financial reporting reserve or the statutory reserve associated with Mr. Abbit's contract *ever* been less than the [minimum guaranteed contractual value] of his contract." (Dkt. No. 70-11 ¶ 7.) Accordingly, Defendants showed that they "maintain[] cash reserves at *all* times to pay class members the cash surrender value of their contracts," not just at termination. (Dkt. No. 125 at 7.) The Court accepted Defendants' contention, (Dkt. No. 117 at 8–9), which Plaintiff leaves unchallenged in his instant motion.

The Court declines to reconsider its decision regarding the breach of contract claim.

### III. California Securities Act Claim

Plaintiff argues that the Court erroneously granted Defendants' motion for summary judgment on the California Securities Act claim. (Dkt. No. 121-1 at 14–18.) Specifically, Plaintiff maintains that the Court, following the principle that "substance governs over form," *People v. Figueroa*, 41 Cal. 3d 714, 733–34, 715 P.2d 680 (Cal. 1986), should have ruled that genuine disputes of material fact existed as to the "shifting of risk effectuated by these FIAs." (Dkt. No. 121-1 at 15.) Plaintiff reiterates his arguments from the summary judgment stage: (a) that Defendants register as a security a "FIA close cousin to the Secure Index contract," and that (b) Plaintiff's expert opinion report from Dr. Craig McCann was "unrebutted." (*Id.* at 15–16.) Plaintiff argues that at

minimum, Dr. McCann's assessment "that these FIAs transfer market risk to the Class" should not have been ignored. (*Id.*)

As a threshold matter, Plaintiff disputes the propriety of the Court's ruling that the contracts at issue are not securities as a matter of law. (Dkt. No. 121-1 at 14–16.) Case law points to the opposite. Courts routinely decide whether transactions constitute sales of securities as a matter of law. *See, e.g.*, *McNabb v. S.E.C.*, 298 F.3d 1126, 1130–31 (9th Cir. 2002) ("Whether a note is a security . . . is a question of law[.]").

Next, annuities are exempted from securities laws under a plain reading of California law. Cal. Corp. Code §25019. Furthermore, the "substance" of the contracts at issue does not yield a different answer. The Court found that "it is illogical to argue that ING FIAs transfer market risk to Plaintiff when the Contract guarantees that Plaintiff will receive at least the amount he invested less the surrender charge," and that "[w]ith a minimum guaranteed cash surrender value, if the market declines during the life of the Contract, it is ING that would bear the risk of loss, not Plaintiff." (Dkt. No. 117 at 10.)

Plaintiff's contention regarding Dr. McCann's expert opinion report does not avail his motion for reconsideration. This is simply a repeated assertion from his opposition to Defendants' motion for summary judgment, where Plaintiff contended that he provided "unrebutted expert opinion" at the class certification stage. (Dkt. No. 81 at 17 n.9.) Defendants submitted a rebuttal expert report at class certification, addressing Plaintiff's expert's opinions about "true value," the alleged overpayment of premium by class members, and the alleged transfer of market risk to class members. (*See, e.g.*, Dkt. No. 42-4 ¶¶ 60–71.)

Moreover, a motion for reconsideration "may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (emphasis in original). The sparse briefing related to Dr. McCann's report in Plaintiff's opposition to Defendants' motion for summary judgment belies Plaintiff's current effort to inject life into arguments that reasonably could have been raised earlier

in the litigation.  In his opposition, Plaintiff referred baldly to Dr. McCann—without any specific citation—with respect to arguments about the consequences of "early surrender" or "early termination," rather than risk.  (Dkt. No. 81 at 13.)  Plaintiff did not otherwise refer to Dr. McCann's opinions in his arguments regarding the California Securities Act claim.  (*Id.* at 10–16.)

      Plaintiff's argument that Defendants registered as a security "a close cousin" to the FIAs at issue merely revives a futile argument from his opposition to Defendants' motion for summary judgment.  (*Compare* Dkt. No. 121-1 at 15–16 *with* Dkt. No. 81 at 15.)  Plaintiff has no response to Defendants' original counterargument that (1) the products Plaintiff cites are different from the FIAs at issue, and (2) that the evidence Plaintiff cites predates key regulatory developments and statutory enactments.  (Dkt. No. 87 at 10.)

      Plaintiff disagrees with the Court's interpretation of *SEC v. United Ben. Life Ins. Co.*, 387 U.S. 202 (1967) and reiterates his argument that "the mere existence of a contractual guarantee in an annuity contract cannot in and of itself be dispositive of the question of whether or not a hybrid annuity, such as the Secure Index contract here, is a security."  (Dkt. No. 121-1 at 17 n.4.)  The contract at issue in *United Benefit* contained a portion that operated similarly to a variable annuity and a portion that did not.  *United Benefit*, 387 U.S. at 204.  The contract at issue operated like a variable annuity in that the net premiums were "placed in a 'Flexible Fund' account which United maintains *separately from its other funds*" for investment, and "[t]he purchaser, at all times before maturity, is entitled to his proportionate share of the total fund" and interest therefrom.  *Id.* at 205 (emphasis added).  However, the contract also operated in part like a traditional annuity, guaranteeing that the purchaser would receive a percentage of his premiums back.  *Id.*  The Supreme Court thus "concluded that because the plan included '[t]wo entirely distinct promises . . . and their operation is separated at a fixed point in time,' the proper method was to divide the annuity plan into its component parts and examine the risk allocation in each part."  *Lincoln Nat. Life Ins. Co. v. Bezich*, 610 F.3d 448, 450 (7th Cir. 2010) (quoting *United Benefit*, 387 U.S. at 207–09).  Accordingly, the Supreme

Court examined the annuity plan's component parts and determined that although the minimum guaranteed value portion of the contract shifted some risk to the insurer, the remaining amount of risk borne by the purchaser rendered the contract ineligible for an exemption from securities law requirements. *See United Benefit*, 387 U.S. at 211.

Here, unlike in *United Benefit*, the FIAs at issue do not contain a component part that operates in substance like a variable annuity. (Dkt. No. 20, First Amended Complaint ¶¶ 26–29). The FIAs do not "completely reverse[] the role of the insurer during the accumulation period." *United Benefit*, 387 U.S. at 208. Moreover, the Court determined that aside from the risk of Defendants' insolvency, Plaintiff bears no risk— not just a lessened amount of risk. (Dkt. No. 117 at 10.)

Finally, Plaintiff argues that *Noa v. Key Futures, Inc.*, 638 F.2d 77 (9th Cir. 1980) supports his assertion that there are genuine issues of material fact as to whether the FIAs are securities. (Dkt. No. 121-1 at 18.) However, Plaintiff misunderstands the Court's citation to *Noa*—the Court cited *Noa* for the proposition that the risk of insolvency borne by Plaintiff is insufficient to render a transaction a sale of a security. *See* 638 F.2d at 79–80. (Dkt. No. 117 at 10.)

Accordingly, the Court declines to reconsider its Order concerning the California Securities Act claim.

### IV. Contract Interpretation

Plaintiff cursorily asserts that the Court erred by not examining "the entirety of the contract to ensure that its provisions are interpreted in harmonious fashion and to identify potential ambiguities." (Dkt. No. 121-1 at 18.) Without further explanation, Plaintiff states that the Court "did not employ standard rules of construction or interpretation." (*Id.* at 19.) Plaintiff adds conclusorily that the Court "gave no weight to the contract values derived from the contract's Strategies provisions" or to the "reporting of Strategy Values," "ignored the undisputed fact that the insurance contracts were prepared by the Defendants and are non-negotiable, and refused to interpret the insurance contracts against the drafter (Defendants)." (*Id.* at 19.)

Beyond a condensed reassertion of arguments made in his opposition to Defendants' motion for summary judgment, (Dkt. No. 81 at 23–26), Plaintiff has not elucidated how the Court's ruling was mistaken. The Court thus declines to revisit its conclusion on this issue.

### V.  California Class Claims

Upon granting Defendants' motion for summary judgment on the breach of contract claim, the Court likewise granted Defendants' motion for summary judgment on the UCL and Financial Elder Abuse claims, "since the UCL and Financial Elder Abuse claims are *based on the same underlying theory* as the breach of contract claim[.]" (Dkt. No. 117 at 9) (emphasis added). Plaintiff asserts that the California class claims (Financial Elder Abuse, UCL, and California Securities Act claims) are independently viable and do not depend on the Court's disposition of the certified breach of contract claim. (Dkt. No. 121-1 at 19–21.)

Plaintiff's first argues that the Financial Elder Abuse claim stands independently of the breach of contract claim because "wrongful use" is a discrete consideration from a contractual breach, and because "[a]llegations that an insurer engaged in deceptive practices in the sale of annuities to senior citizens" suffices for a Financial Elder Abuse claim. (Dkt. No. 121-1 at 19–21.) However, Plaintiff's argument fails. The Court certified the Financial Elder Abuse claim based on "Plaintiff's theory regarding the failure to maintain guaranteed values of the Secure Index FIAs." (Dkt. No. 59 at 22.) In its ruling granting Defendants' motion for summary judgment, the Court made clear that its decision on the UCL and Financial Elder Abuse claims rested not on the mere absence of a breach of contract, but on its conclusion that the "same underlying theory" undergirding the breach of contract, UCL, and Financial Elder Abuse claims was unviable. (Dkt. No. 117 at 5–9.) Moreover, to the extent Plaintiff is attempting to resuscitate his deceptive advertising claims, the Court declined to certify Plaintiff's claims of deceptive advertising under the UCL and the False Advertising Law. (Dkt. No. 59 at 18–20, 21–22.)

1    Next, Plaintiff cursorily argues that because "[a]ny statute or law can provide the predicate violation establishing liability under the Unlawful Prong of the UCL," any violation of Cal. Ins. Code §§ 332, 780, 781, 827, or 10168.25 could constitute a predicate violation for the UCL claim. (Dkt. No. 121-1 at 21.)  Plaintiff's contention is flawed.  First, the Court certified the UCL claim based on "Plaintiff's theory under the Insurance Code . . . that ING failed to maintain guaranteed values of the Secure Index FIAs as required by Cal. Ins. Code § 10168.25." (Dkt. No. 59 at 20.)  The Court subsequently reasoned that because a breach of contract may also form a predicate for a UCL claim, a breach of contract "based upon the same 'unlawful' failure to maintain guaranteed values of the FIAs" could also constitute an unfair business practice for purposes of the UCL. (*Id.* at 21.)  Again, the Court granted Defendants' motion for summary judgment on the UCL claim based on the Court's rejection of the same theory underlying the breach of contract, UCL, and Financial Elder Abuse claims. (Dkt. No. 117 at 5–9.)  Second, even if Plaintiff's position were correct, Plaintiff does not proffer any law or facts to shore up his argument that there are genuine disputes of material fact as to whether Defendants violated applicable sections of the California Insurance Code. (Dkt. No. 121-1 at 21; Dkt. No. 127 at 10.)

Finally, Plaintiff's brief contention that the California Securities Act claims do not depend on a contractual breach is moot. (Dkt. No. 121-1 at 21.)  The Court did not dispose of Plaintiff's California Securities Act claims on the basis of the absence of a contractual breach. (Dkt. No. 117 at 9–10.)

Accordingly, Plaintiff's motion for reconsideration on the grounds that the California class claims are viable absent a breach of contract fails.

## VI.   Plaintiff's Rule 56(d) Discovery Request

Plaintiff contends that the Court erroneously denied his request for further discovery pursuant to Federal Rule of Civil Procedure 56(d). (Dkt. No. 121-1 at 22–23.)  Plaintiff argues that the Court denied him discovery "germane" to the common class claims, including, *inter alia*, "pricing memoranda" and "ING's interest-crediting

decisions driven by meeting corporate objectives." (*Id.* at 22.)  Plaintiff casts the Court's denial of his Rule 56(d) discovery request as an "adverse ripple effect[] of the Court's decision to recast the common Class contention in a completely different way than what had been previously certified." (*Id.*)

Defendants respond that Plaintiff failed to meet his burden of establishing that existing facts would raise genuine issues of material fact, and that Plaintiff sought "irrelevant or nonexistent evidence" that could not have rebutted the Court's bases for granting Defendants' motion for summary judgment.  (Dkt. No. 125 at 10.)

"[A] district court should continue a summary judgment motion upon a good faith showing by affidavit that the continuance is needed to obtain facts essential to preclude summary judgment." *California v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998).  To meet this burden, Plaintiff "must show (1) that [he] ha[s] set forth in affidavit form the specific facts that [he] hope[s] to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion." (*Id.*)

Even if Plaintiff were able to show that the facts he sought from further discovery exist, Plaintiff failed to establish that the sought-after facts were essential to resisting Defendants' motion for summary judgment.  For this reason, the Court denied Plaintiff's Rule 56(d) discovery request. (Dkt. No. 117 at 11.)  Presently, Plaintiff still does not meet his burden in the instant motion for reconsideration.  Plaintiff simply repackages his Rule 56(d) discovery request in a new vehicle and fails to show how the Court committed clear error in its initial decision to deny his request. (*Compare* Dkt. No. 81-33 at 2–4 *with* Dkt. No. 121-1 at 22–23.)  Accordingly, the Court concludes that its denial of Plaintiff's Rule 56(d) discovery request was proper.

### VII. Plaintiff's Request for Amendment of the Order

Finally, Plaintiff asserts that "in the absence of vacating the Order outright . . . the Court must at least amend the Order to clarify that it only applies to Plaintiff Abbit" and not the non-representative class members. (Dkt. No. 121-1 at 23.)  Plaintiff's request for

clarification is meritless. "All that must take place for a decision granting summary judgment to be binding on the class is that notice be sent before judgment is ultimately granted." *Yeoman v. Ikea U.S.A. W., Inc.*, No. 11CV701-WQH BGS, 2014 WL 1128252, at *6 (S.D. Cal. Mar. 20, 2014). Here, the Court ordered dissemination of the class notice on April 26, 2016. (Dkt. No. 91.) On July 20, 2016, the class opt-out period expired. (*Id.* at 1.) Accordingly, the Court's August 30, 2016 Order granting Defendants' motion for summary judgment on the certified class claims applied to the entire class. A judgment in favor of the defendant in a class action "extinguishes the claim." *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 874 (1984). The Court thus denies Plaintiff's request to amend the Order.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiffs' motion for reconsideration.

**IT IS SO ORDERED.**

Dated: December 12, 2016

Hon. Gonzalo P. Curiel
United States District Judge